**Mary Rose KELL n/k/a Mary Rose Gladding, Respondent,**

v.

**David T. KELL, Appellant.**

**No. ED 77482.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 26, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 9, 2001.

Application for Transfer Denied
Sept. 25, 2001.

Thomas E. Osterholt, Jr., Clayton, MO, for appellant.

Charles P. Todt, Clayton, MO, for respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

David T. Kell (Father) appeals from the trial court's judgment allowing Mary Rose Kell n/k/a Mary Rose Gladding (Mother) to relocate the divorced couple's two minor children to Florida. Father argues the trial court erred in (1) finding Mother could relocate the children to Florida because the judgment was against the weight of the evidence and there was no substantial evidence that relocation was in the best interest of the children, (2) denying Father's motion to dismiss because Mother failed to give proper notice as required by statute, and (3) failing to admit expert testimony because the expert was qualified to testify. We affirm.

Mother and Father were married on March 3, 1984. Mother and Father had two children, born August 25, 1985 and December 8, 1987. Their marriage was dissolved on March 5, 1992, and Mother and Father were awarded joint legal custody. Mother was awarded primary physical custody while Father was awarded rights of temporary custody and visitation. The court later reduced the amount of visitation to reflect the reality that Father was not seeing his children as often as his visitation allowed.

Mother filed a Notice of Proposed Relocation of the children from Missouri to Florida. Father filed his motion to prevent relocation. The trial court considered the four factors for relocation initially laid out in *Michel v. Michel*, 834 S.W.2d 773, 777 (Mo.App. S.D.1992), and found it would be in the best interest of the children to allow the children to relocate with Mother to Florida. The court allocated transportation expenses for the children's visitation with Father between Mother and Father.

Our review of this case is governed by Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decision of the trial court must be affirmed unless it is against the weight of the evidence, unsupported by substantial evidence, or misstates or misapplies the law. *Murphy* 536 S.W.2d at 32; *Green v. Green*, 26 S.W.3d 325, 327 (Mo.App.E.D. 2000). Where there is conflicting evidence, this court defers to the trial court. *Id.* We will affirm the trial court's judgment even if there is evidence which would support a different conclusion. *Id.* On appeal, we do not retry the case, but accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence. *Pokrzywinski v. Pokrzywinski*, 8 S.W.3d 222, 223 (Mo.App. E.D.1999).

In his first point, Father argues the trial court erred in finding Mother could relocate the children to Florida because the judgment was against the weight of the evidence and there was no substantial evidence that relocation was in the best interest of the children. Father argues the

four-factor test set out in *Michel* weighed in favor of Father and not Mother. Father further argues Mother's failure to give proper notice of relocation under Section 452.377.2, RSMo 2000, should have been considered in the trial court's judgment regarding relocation. We disagree.

We first note, the Missouri Supreme Court's recent case of *Stowe v. Spence*, 41 S.W.3d 468 (Mo. banc 2001), overruled the test set out in *Michel* in favor of a test following Section 452.377, RSMo 2000. Where the relocation of a child is at issue, Section 452.377, RSMo 2000, requires the court to determine that the relocation: (1) is in the best interests of the child, (2) is made in good faith, and (3) if ordered, complies with the requirements of subsection 10. *Stowe*, at 469. Subsection 10 of Section 452.377, RSMo 2000, requires contact with the nonrelocating party and the allocation of transportation expenses. The *Stowe* court found *Michel's* four-part test is inconsistent with these statutory requirements and shall not be used in determining the child's best interests. *Stowe*, at 469.

Section 452.377, RSMo 2000, has broadened the inquiry in a relocation case to any substantial evidence bearing on the good faith of the custodial parent and/or the best interests of the children. *Brethorst v. Brethorst*, 50 S.W.3d 864 (Mo. App.E.D. 2001). Now, the *Michel* four factors are simply evidence, rather than a test; the statute provides the test. *Id.* In determining whether the trial court complied with Section 452.377 we examine the court's findings and the record to determine whether there is substantial evidence that the relocation is proposed in good faith and is in the best interests of the children. *Abernathy v. Meier*, 45 S.W.3d 917 (Mo.App.E.D. 2001).

Here, the trial court made findings of fact and conclusions of law detailing how it weighed the relevant factors. Even though the *Michel* test shall no longer be used, we can determine from the findings of fact and conclusions of law how the court weighed the statutory factors that are now to be used in determining relocation cases.

The trial court considered the best interests of the children and found in favor of mother. The trial court acknowledged the best interests of the children is the paramount concern in a relocation case. The trial court also stated it had given consideration to the relevant factors set forth in Section 452.375, RSMo 2000. Section 452.375.2, RSMo 2000, details the relevant factors the court should consider when determining the best interests of the child. Section 452.375.2 states:

> The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:
>
> (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
>
> (2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
>
> (3) The interaction and interrelationship of the child with parents, siblings, and any other person who significantly affect the child's best interests;
>
> (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
>
> (5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

Here, the trial court found there was credible evidence that the general quality of life of Mother and the children would increase by relocating to Florida and would diminish by remaining in Missouri. There was evidence that by relocating to Florida Mother could continue to stay home and care for the children. With the move to Florida, the children's general quality of life will improve in that the children will have the advantage of their mother staying at home and caring for them, while living in a stable environment with two mature adults. The children, ages 11 and 13 at the time of the hearing, also expressed a desire to move to Florida. The trial court ordered visits between Father and children on nearly a monthly basis. The trial court found the move would not greatly decrease Father's temporary custody and visitation schedule with the children as it now exists. The children would visit Father on long school weekends and holidays.

The trial court determined the relocation was made in good faith. The trial court found Mother's intent to relocate was not for the purpose of denying Father's visitation rights. It also found the relocation was in the best financial interest for Mother and her new husband. There was evidence Mother's new husband took the job in Florida because it was an "opportunity of a lifetime" and a great career move. The evidence and reasonable inferences support a finding that Mother's motive in moving to Florida was clearly to be with her new husband and not to deprive Father of his visitation rights with the children.

The trial court also followed the requirements of Section 452.377, subsection 10, RSMo 2000. Subsection 10 requires contact with the nonrelocating party and the allocation of transportation costs. Mother agreed to pay for half of the expenses of transporting the children to visit Father and offered to pay for some of Father's hotel costs when he visits the children in Florida. Here, the trial court ordered weekend, summer, and holiday visitation and allocated the transportation expenses for the visitations.

After reviewing the evidence and inferences in the light most favorable to the verdict, we find the evidence detailed above supports the trial court's findings on each of the statutory factors. There was substantial evidence to support the trial court's judgment permitting Mother to relocate with the children to Florida. We find the trial court complied with the statute as ordered in *Stowe*.

Father further argues Mother's noncompliance with Section 452.377.2, RSMo 1994, should have been considered in the trial court's judgment regarding relocation. Section 452.377.2–3, 5, RSMo 1994, states:

2. Notice of a proposed relocation of the residence of the child, or any party entitled to custody or visitation of the child, shall be given in writing by certified mail, return receipt requested, to any party with custody or visitation rights. Absent exigent circumstances as determined by a court with jurisdiction, written notice shall be provided at least sixty days in advance of the proposed relocation. The notice of the proposed relocation shall include the following information:

(1) The intended new residence, including the specific address and mailing address, if known, and if not known, the city;

(2) The home telephone number of the new residence, if known;

(3) The date of the intended move or proposed relocation;

(4) A brief statement of the specific reasons for the proposed relocation of a child, if applicable; and

(5) A proposal for a revised schedule of custody or visitation with the child, if applicable.

3. A party required to give notice of a proposed relocation pursuant to subsection 2 of this section has a continuing duty to provide a change in or addition to the information required by this section as soon as such information becomes known.

5. The court shall consider a failure to provide notice of a proposed relocation of a child as:

(1) A factor in determining whether custody and visitation should be modified;

(2) A basis for ordering the return of the child if the relocation occurs without notice; and

(3) Sufficient cause to order the party seeking to relocate the child to pay reasonable expenses and attorneys fees incurred by the party objecting to the relocation.

Father contends Mother did not give Father all relevant information before the children were taken to Florida. However, there is ample evidence in the record that Mother provided Father with the phone number and address of the children's proposed home as soon as the information became available. There is also ample evidence in the record that Father received notice of the proposed relocation when it was mailed to him and served upon his counsel. Further, by statute, lack of any notice is only to be considered if there is a failure to provide notice. Here, Mother provided notice of the proposed relocation. Point denied.

■ In his second point, Father argues the trial court erred in denying Father's motion to dismiss because Mother failed to give proper notice as required by statute. We disagree.

Section 452.377.2, RSMo 1994, states in pertinent part:

Notice of a proposed relocation of the residence of the child, or any party entitled to custody or visitation of the child, shall be given · in writing by certified mail, return receipt requested, to any party with custody or visitation rights.

We note the legislature changed the language of this statute in 1998. The certified mail, return receipt requested language was added. The reason for the change was because of a change in the way the statute would operate. With the change, a hearing is no longer required. If a parent is notified by certified mail, return receipt requested and the parent does not file a motion seeking an order to prevent the relocation, the move can occur without a hearing. Section 452.377.7, RSMo 1994.

Here, we find notice was served upon Father's counsel and mailed to Father. We find Father waived any objection by filing his Motion in Opposition to Mother's notice. Father had a full hearing on the issue of the proposed relocation prior to the relocation. Father has not demonstrated he was prejudiced or was unable to prepare for the relocation hearing. We note that the litigation surrounding the relocation of the children was one of many matters being litigated between the parties. Because Father objected to the move and there was a hearing in this case prior to the move, it is clear Father received notice. We note that we are not addressing the situation where the non-custodial parent relies on the failure to serve by certified mail and is prejudiced. We find the notice served on Father's counsel did not contravene the intentions of the legislature. We find the notice was sufficient under the facts in this case. Point denied.

In his third point, Father argues the trial court erred in failing to admit expert testimony because the expert was qualified to testify. Father attempted to admit expert testimony on the quality of the schools in the two areas in Florida and Missouri. We disagree.

 Whether a witness's qualifications to state an opinion are sufficiently established rests largely in the discretion of the trial court and its ruling thereon will not be disturbed on appeal unless there is a clear showing of abuse. *Donjon v. Black & Decker (U.S.), Inc.*, 825 S.W.2d 31, 32 (Mo.App. E.D.1992). Likewise the admission or exclusion of expert testimony is a matter within the discretion of the trial court and that discretion will not be interfered with unless it plainly appears that it has been abused. *Id.*

 In a civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. *Id.* In order for a witness to be qualified as an expert, it must be shown that by reason of education or specialized experience the witness possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or of drawing correct conclusions. *Id.* Substantial practical experience in the area in which the expert is testifying is a permissible source of expertise. *Id.* If the witness has some qualifications, the testimony may be permitted. *Id.* The extent of an expert's experience or training goes to the weight of his testimony and does not render the testimony incompetent. *Id.*

Here, the trial court admitted the testimony of Father's witness and admitted the data the witness presented, but did not qualify the witness as an expert. The trial court's judgment also indicates the trial court considered the witness's testimony. The trial court stated, "There was credible evidence that the Florida public schools may not be as good as Parkway Schools, but the Court does not doubt Mother's commitment to providing the best education possible for the children, including transferring them to a private school."

Father complains the witness's testimony would have been given more weight if the witness had been qualified as an expert. With the report admitted as evidence before the trial court, the interpreting of the data on the report would not require specialized knowledge that would have assisted the judge as the trier of fact. The witness could not remember if he had personally visited either school district being compared nor had he talked with the children to learn what their special needs

were. He had no peculiar or specialized knowledge, wisdom or skill. He did not have superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or of drawing correct conclusions. His knowledge came from reading the report his company generated which the trial court admitted into evidence.

We find the trial court did not abuse its discretion in not qualifying Father's witness as an expert. Point denied.

Judgment affirmed.

MARY RHODES RUSSELL, J., and RICHARD B. TEITELMAN, J., concur.