**Reesa SWISHER, Appellant,**

v.

**Allen SWISHER, Respondent.**

**No. WD 61874.**

Missouri Court of Appeals,
Western District.

Nov. 25, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2004.

Robert C. Paden, Jr., Independence, MO, for Appellant.

Patrick E. White, Kansas City, MO, for Respondent.

Before BRECKENRIDGE, P.J., EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Reesa Washecheck, f.k.a. Reesa Swisher, appeals the § 452.377 [1] order of the Circuit Court of Jackson County preventing her from relocating with her minor

___

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

children to Oklahoma.[2] The relocation was opposed by the respondent, Allen Swisher, the father of the children and the appellant's former husband.

The appellant raises two points on appeal. She claims that the trial court erred in preventing her from relocating with the minor children to Oklahoma, in accordance with § 452.377, for failure to carry her statutory burden of proving that the proposed relocation was sought in good faith because: (1) the court's good-faith finding was not supported by the record in that "[the respondent] admitted that [the appellant] was acting in good faith; [the appellant] offered [the respondent] additional parenting time in excess of [the respondent's] current schedule; and [the appellant's] remarriage made it impractical for the children and her to continue to reside in Missouri"; and, (2) in making its good-faith determination, the court misapplied § 452.377 by relying on appellant's representations in the dissolution proceeding concerning her intent to remarry and relocate after the dissolution was granted.

We reverse and remand.

### Facts

The parties' marriage was dissolved in the Circuit Court of Jackson County on October 19, 2001. There were two children born of the marriage: (1) Tanner Lee Swisher, born March 3, 1994; and (2) Chase Matthew Swisher, born October 19, 1997. The parties were awarded joint legal custody of the children, with primary physical custody to the appellant. The respondent was awarded specific visitation with the children, which included alternating weekends from Friday at 5:30 p.m. to Monday at 8:00 a.m. and one evening per week from 5:30 p.m. to 8:30 p.m. during the school year. In addition, he was awarded two weeks of summer visitation and alternating holidays.

On January 7, 2002, the respondent received a written notice via certified mail from the appellant, advising him that she intended to relocate to Oklahoma with the children, and that she and the children would be living with her new husband, Kent Washecheck. In response, the respondent filed a motion in the trial court on February 5, 2002, requesting an order of the court preventing the proposed relocation. On March 5, 2002, the appellant filed an answer to the respondent's motion. On that same date, she filed a separate motion that she denominated a "MOTION TO RELOCATE THE RESIDENCE OF THE UNEMANCIPATED CHILDREN TO THE STATE OF OKLAHOMA."

The parties' motions were taken up and heard on July 22, 2002. On August 9, 2002, the trial court entered an order pre-

---

**2.** Although the trial court's "judgment" indicates that it was sustaining the respondent's motion to prevent the appellant's proposed relocation and overruling appellant's motion to relocate, § 452.377 does not envision a motion to relocate. The statute provides that the relocating parent is to give notice to the non-relocating parent of the proposed relocation and that if the non-relocating parent objects to the relocation, that parent is to file "a motion seeking an order to prevent the relocation within thirty days after receipt of such notice." § 452.377.7; *see also Baxley v. Jarred*, 91 S.W.3d 192, 196 (Mo.App.2002).

After the filing of the motion, the relocating parent then has fourteen days within which to file a response. § 452.377.7. Thus, under the statutory scheme of § 452.377, the issue of whether a proposed relocation will be permitted is resolved in the court's "order" either sustaining or overruling the non-relocating parent's "motion seeking an order to prevent the relocation." § 452.377.7. Thus, in accordance with § 452.377, the appeal here is from the trial court's order sustaining the respondent's motion to prevent the appellant's relocation.

venting the appellant from relocating to Oklahoma with the children.

This appeal followed.

## Standard of Review

Our review of a court-tried case involving matters of child custody is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. *banc* 1976). *Baxley v. Jarred,* 91 S.W.3d 192, 196 (Mo.App.2002). We will affirm the judgment so long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Id.* An appellate court should not set aside a judgment as being against the weight of the evidence, unless it firmly believes that the judgment is wrong, or the judgment is clearly against the logic of the circumstances. *Bauer v. Bauer,* 97 S.W.3d 515, 518 (Mo.App.2002).

## I.

Logically, we cannot address the sufficiency of the evidence question presented in Point I, until we resolve the question presented in Point II as to whether the appellant's past representations, concerning her intent to remarry and relocate after dissolution, support the trial court's good-faith determination, in accordance with § 452.377. Thus, we address Point II first.

In Point II, the appellant claims that the trial court erred in preventing her from relocating with the minor children to Oklahoma, in accordance with § 452.377, for failure to carry her statutory burden of proving that the relocation was proposed in good faith because in making its good-faith determination, the court misapplied § 452.377 by relying on appellant's representations in the dissolution proceeding concerning her intent to remarry and relocate after the dissolution was granted. Specifically, she claims that the trial court, in finding that her proposed relocation to Oklahoma was not predicated on good faith, misapplied the law by relying on its finding that she had misled the court in the dissolution proceeding concerning her intent to remarry and relocate after dissolution of the parties' marriage.

Section 452.377 governs the "relocation of children" in this state. "Relocation" is defined as a "change in the principal residence of a child for a period of ninety days or more, but does not include a temporary absence from the principal residence." § 452.377.1. In accordance with § 452.377.2, a relocating parent must give written notice to the non-relocating parent of a proposed relocation. The non-relocating parent then has thirty days within which to file a motion seeking to prevent the proposed relocation. § 452.377.7.

There is no dispute that the appellant and the respondent complied with the requirements of § 452.377.2 and § 452.377.7, such that the issue of whether the appellant should be permitted to relocate to Oklahoma, as she proposed in her notice, was squarely before the trial court. And, in accordance with § 452.377.9, the burden was on the appellant to prove that her relocation to Oklahoma was proposed in good faith and was in the best interest of the children. *Stowe v. Spence,* 41 S.W.3d 468, 469 (Mo. *banc* 2001); *Baxley,* 91 S.W.3d at 200.

In its order preventing the appellant from relocating as proposed, the trial court relied expressly and solely on its finding that the appellant had failed to carry her burden of proving good faith for the proposed relocation and did not reach the issue of whether the relocation was in the children's best interests. In that regard, the trial court found in its order:

[The appellant] testified very carefully [at trial] that she had no *present* plans

to marry Mr. Washecheck [her present husband and paramour at the time of dissolution] or to move to Oklahoma. Based in part on that testimony, on October 22, 2001, this Court entered Judgment, awarding primary physical custody of the children to Petitioner, with both parties having joint legal custody.

. . .

The court believes that Petitioner has failed to satisfy her burden to show good faith. When this Court decided that Petitioner should be primary residential custodian, it did so in reliance on Petitioner's assurances that she had no intent to move to Oklahoma. The timing between Petitioner's divorce and her swift remarriage—a remarriage that ineluctably included relocation unless blocked by the Court—belies the serendipitous nature of the new marriage claimed by Petitioner. The Court finds that Petitioner has not satisfied her burden to show good faith.

Thus, the trial court's determination of a lack of good faith by the appellant, in seeking to relocate to Oklahoma in the § 452.377 relocation proceeding, was based solely on its belief that it had been duped by the appellant in the dissolution proceeding into granting her primary physical custody of the children, believing that she had no present intent to remarry or relocate with the children. The appellant claims in this point that the trial court's reliance on her alleged prior misrepresentations as to her intent to remarry or relocate was improper in making its good-faith determination in accordance with § 452.377.9, in that, even if she did intentionally mislead the court concerning her then intent to relocate, which she denies, such misrepresentations were insufficient to support the court's finding that the appellant's proposed relocation was not being made in good faith. We agree.

In determining the issue presented in this point, we necessarily must understand what "good faith" means for purposes of § 452.377.9. "Good faith" is not defined in the statute. However, in reading § 452.377.9, it is readily apparent that "good faith" references the relocating parent's motivation or purpose for relocating. In that regard, our appellate courts have essentially defined it as the relocating parent's motive or purpose for relocating being something other than to disrupt or deprive the non-relocating parent of contact with the children. *Dixon v. Dixon,* 62 S.W.3d 589, 594 (Mo.App.2001); *Kell v. Kell,* 53 S.W.3d 203, 207 (Mo.App.2001). In *Dixon,* the appellate court found sufficient evidentiary support for the trial court's finding of a lack of good faith based on evidence that the relocating parent's motivation for relocating "was to limit [the non-relocating parent's] contact" with the children. 62 S.W.3d at 594. In *Kell,* the appellate court found evidentiary support for the trial court's finding of good faith based on evidence that the mother's relocation "was not for the purpose of denying Father's visitation rights" and that the "relocation was in the best financial interest for Mother and her new husband." 53 S.W.3d at 207. And, in *Cullison v. Thiessen,* 51 S.W.3d 508, 512 (Mo.App.2001), this court found that the testimony of the mother that "she wanted to move . . . to be with her husband and to have her family there with her" was sufficient to support the trial court's good-faith finding.

■ Inasmuch as "good faith," for purposes of § 452.377.9, speaks only to the relocating parent's motive or purpose for relocating, or, in other words, the "why" for relocating, evidence concerning "if" the relocating parent intended or when the parent formed an intent to relocate, would not be relevant on the issue of good faith in a relocation proceeding, except to the

extent it would bear on the trial court's determination of the witness' credibility. *See King v. King,* 66 S.W.3d 28, 33 (Mo. App.2001) (stating that the trial court has broad discretion in determining the credibility of the witnesses, and may accept or reject all, part, or none of the testimony it hears). Thus, as the appellant claims in this point, it was improper for the trial court, in finding that she was not acting in good faith in seeking to relocate to Oklahoma, to rely solely on evidence that she was not forthcoming in the prior dissolution proceeding concerning her intent to remarry and relocate to Oklahoma after her marriage was dissolved, except as it bore on her credibility.

Ruling as we do in this point, we are mindful of this court's *dicta* in *McDonald v. Burch,* 91 S.W.3d 660, 663–64 (Mo.App. 2002), that: "While past actions may certainly prove relevant to finding good faith or lack thereof in some circumstances, here, the court focused too heavily on mother's past actions during the prior dissolution proceedings while seemingly disregarding her current reasons for requesting relocation." To the extent that this language could be interpreted as allowing the trial court to consider evidence concerning when the relocating parent formed an intent to relocate, as opposed to the motivation or purpose for relocating, in making its good-faith determination in accordance with § 452.377.9, we find that it is non-binding *dicta.*

■■ In *McDonald,* this court affirmed the trial court's order preventing the mother from relocating on the sole basis that the trial court's finding, that the relocation was not in the children's best interests, was supported by the evidence and was not an abuse of discretion. 91 S.W.3d at 666. The mother claimed on appeal that the trial court erred in preventing her from relocating because its finding, that

she was not acting in good faith in relocating, improperly relied on evidence concerning her prior misrepresentations during the dissolution proceeding dealing with her having a boyfriend and intending to relocate to Texas to be with him after the dissolution was granted. In affirming, this court opined:

> Although, as discussed below, we need not necessarily address the issue of good faith because we affirm the trial court's judgment that relocation is not in the children's best interests, we nonetheless wish to note the following with regard to the trial court's finding that Mother failed to show that her proposal for relocation was made in good faith.

*McDonald,* 91 S.W.3d at 663. Thus, the court's discussion of good faith was *dicta* in that it was not essential to the court's decision. "Obiter dicta, by definition, is a gratuitous opinion. Statements are obiter dicta if they are not essential to the court's decision of the issue before it." *Richardson v. QuikTrip Corp.,* 81 S.W.3d 54, 59 (Mo.App.2002) (citations omitted). While *dicta* can be persuasive when supported by logic, it is not precedent that is binding upon us. *City of Carthage, Jasper County v. United Mo. Bank of Kansas City, N.A.,* 873 S.W.2d 610, 615 (Mo.App.1994). Hence, we are not bound, as precedent, by this court's musings in *McDonald* that "past actions may certainly prove relevant to finding good faith or lack thereof in some circumstances." 91 S.W.3d at 663.

As far as being persuaded by the logic of the trial court's *dicta* in *McDonald,* given the fact that good faith, for purposes of § 452.377.9, is limited to the relocating parent's motivation or purpose for relocating, we would only be persuaded where it could be shown that the past actions bore directly on the issue of the relocating parent's present motivation or purpose for relocating. In our case, we

fail to see how a reasonable inference could be drawn by the trial court, from the appellant's misrepresentations at the dissolution proceeding about her intent to remarry and relocate, that her motive and purpose in relocating to Oklahoma was to deprive or limit the respondent's contact with his minor children. Hence, the trial court's reliance on evidence of those misrepresentations in preventing the appellant from relocating for a lack of good faith was error.

Before leaving *McDonald,* it is worthy of noting that the mother testified that her purpose in relocating to Texas was "to be with her new husband and near her family." In that regard, this court opined that, despite the evidence concerning the mother's being less than forthright with the trial court at the dissolution proceeding concerning her having a boyfriend and intending to relocate, "[w]e cannot say from the record that Mother's current request to relocate was not made in good faith." *McDonald,* 91 S.W.3d at 664. This language clearly supports the proposition that prior misrepresentations about an intent to relocate are not persuasive on the issue of good faith or the purpose for relocating.

■ The respondent contends that the trial court's order preventing her from relocating, predicated on a lack of good faith for her misleading the court, at the time of the dissolution, concerning her intent to remarry and relocate, was justified based on the equitable doctrine of "unclean hands." The respondent contends that this equitable doctrine applies in that, although proceedings under the Dissolution of Marriage Act are statutory actions, equitable principles apply, citing *Schaffer v. Haynes,* 847 S.W.2d 814 (Mo.App.1992), and *In Re the Marriage of Breen,* 560 S.W.2d 358 (Mo.App.1977). The respondent's reliance on the unclean hands doctrine for supporting the trial court's good-faith determination is misplaced.

■ It is well settled that: "A court of equity will not aid a plaintiff who comes into court with unclean hands. One who has engaged in inequitable activity regarding the very matter for which he seeks relief will find his action barred by his own misconduct." *Kenney v. Emge,* 972 S.W.2d 616, 620 (Mo.App.1998) (citations omitted). However, the underlying relocation proceeding is not an equitable action, but an action at law, brought in accordance with § 452.377. The unclean hands doctrine is not available as a defense to proceedings at law, even though based on equitable principles. *Karpierz v. Easley,* 68 S.W.3d 565, 571–72 (Mo.App.2002).

Answering the question presented in Point II does not end our inquiry as to the propriety of the trial court's preventing the appellant from relocating to Oklahoma based on a finding of a lack of good faith. Inasmuch as we are to affirm the trial court's judgment on any basis supported by the law and the facts of the case, *Ballard v. Ballard,* 77 S.W.3d 112, 118 (Mo.App.2002), we still must determine whether the record, excluding the evidence of the appellant's intent to relocate at the time of the dissolution proceeding, would support the court's finding of a lack of good faith.

## II.

■ In Point I, the appellant claims that the trial court erred in preventing her from relocating with the minor children to Oklahoma, in accordance with § 452.377, for failure to carry her statutory burden of proving that the proposed relocation was sought in good faith because the court's good-faith finding was not supported by the record in that "[the respondent] admitted that [the appellant] was acting in good faith; [the appellant] offered [the respon-

dent] additional parenting time in excess of [the respondent's] current schedule; and [the appellant's] remarriage made it impractical for the children and her to continue to reside in Missouri." Specifically, the appellant claims that the trial court erred because the record does not contain any evidence from which it can be reasonably inferred that in seeking to relocate, she was not acting in good faith by attempting to limit the respondent's contact with the children. We agree.

There is nothing in the record to suggest that the appellant, in seeking to relocate, was not acting in good faith or, in other words, was seeking to disrupt or deprive the respondent of contact with the children. In fact, from the record, it is clear that the respondent never even alleged or argued below that the appellant's request to relocate was not made in good faith. Rather, in seeking to prevent the relocation, he alleged in his motion that it was not in the children's best interests because it "would make it impossible for him to have frequent, continuing and meaningful contact with his children." Likewise, at the hearing on his motion, the respondent testified, under cross-examination by the appellant's attorney:

Q. Do you think [the appellant] has any bad motivation in trying to move? Do you think she's trying to interfere with your relationship with the kids?

A. Not intentionally. Not directly, no.

Q. ... And I think you testified that you don't believe that Mrs. Washecheck is intentionally trying to interfere with your relationship with your children.

A. Not directly. Indirectly it's going to interfere.

From the respondent's own testimony, it is clear that even he did not believe that in seeking to relocate the appellant was motivated by a desire to limit his contact with the children or, in other words, was acting in bad faith.

The appellant testified at the motion hearing that the reason she was seeking to relocate was not only to be with her husband, who lived and worked in Oklahoma, but to provide the children with a more stable home, in that if she were allowed to relocate with her children, she would be able to be a full-time, stay-at-home mother. In that regard, it is undisputed that the appellant's husband had lived in Oklahoma for some time and operated a family business, which provided sufficient income for the appellant to be a stay-at-home mother. Thus, even if the trial court were inclined to reject the appellant's testimony as to her motive for relocating, the undisputed evidence would support a good faith motive for moving.

Further evidence of the appellant's good faith in relocating can be inferred from her testimony that to compensate the respondent for the loss of visitation he would experience as a result of the relocation, she would agree to a modification of the existing parenting plan to allow daily phone and e-mail contact between the respondent and the children, and to allow the respondent visitation for an extra month during the summer and every winter break, rather than every other winter break. She also testified that she would keep the respondent informed of all the children's activities. This willingness to accommodate the respondent after relocation was corroborated by her proposed revised parenting plan that was attached to her notice of proposed relocation to the respondent, in accordance with § 452.377.2(5), which was offered by the respondent and admitted at trial, and reads:

### PARENTING PLAN

All terms of our Parenting Plan will remain the same except as follows:

1. Alternating weekend visitation would be from 6:00 p.m. Friday to 6:00 p.m. Sunday;
2. There would be no weeknight evening visitation;
3. Summer visitation would increase from two weeks to six weeks. (The specific schedule can be agreed to fit father's schedule.);
4. In even-numbered years, the children will be with mother from 6:00 p.m. on the day school lets out for winter break until December 28 at 6:00 p.m. Father shall have the children from 6:00 p.m., December 28, to the evening before school resumes from winter break at 6:00 p.m. In odd-numbered years, the schedule will be reversed;
5. The parties would transfer the children at the beginning and conclusion of all parenting time in Carthage, Missouri.

Under this proposed plan, the respondent would lose weeknight evening visitation, which consisted of one evening per week from 5:30 p.m. to 8:30 p.m. during the school year. The respondent's weekend visitation would also be diminished from 5:30 p.m. Friday to 8:00 a.m. Monday to 6:00 p.m. Friday to 6:00 p.m. Sunday under the proposed plan. However, the respondent would gain four weeks of visitation in the summer. Thus, the appellant's proposed parenting plan clearly demonstrates that she was not seeking to relocate to limit the respondent's contact with the children.

■ Given the record, a finding by the trial court that the appellant failed to carry her burden of proving that the relocation to Oklahoma would be in good faith, or in other words, would be for a purpose other than disrupting or depriving the respondent's contact with the children, would be against the clear weight of the evidence. A trial court's ruling is against the weight of the evidence when it is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Adams v. Adams,* 51 S.W.3d 541, 546 (Mo. App.2001).

■ The fact that the record would not support the trial court's finding that the proposed relocation was not in good faith does not end the inquiry required by the court in determining whether to allow the relocation. As discussed, *supra,* the trial court, before ruling in a § 452.377 relocation case, must not only determine whether the proposed relocation was being made in good faith, but must also determine whether it would be in the children's best interests. Thus, because the trial court here did not reach the issue of the children's best interests in preventing the relocation, in reversing the order preventing the appellant from relocating, we are required to remand for the court to consider that issue and then rule in accordance with § 452.377.

### Conclusion

The trial court's order of August 9, 2002, preventing the appellant from relocating to Oklahoma, is reversed and the case remanded to the court for the sole purpose of determining whether the appellant's proposed relocation would be in the best interests of the children, including hearing additional evidence on that issue, if deemed necessary by the court, and then ruling in accordance with § 452.377.

BRECKENRIDGE, P.J., and HOWARD, J., concur.