## In re the MARRIAGE OF Rebecca R. WILLIAMS and Jason S. Williams.

### Rebecca R. Williams (Now Saiz) Petitioner–Appellant,

v.

### Jason S. Williams, Respondent–Respondent.

No. 27836.

Missouri Court of Appeals, Southern District., Division One.

April 23, 2007.

---

Wendy E. Yocum, Springfield, for Appellant.

Jason S. Williams, Springfield, acting pro se.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Rebecca R. (Williams) Saiz ("Mother") sent a letter of her intention to relocate with the minor child to Jason S. Williams ("Father"). Before the trial court was Father's motion for an order preventing relocation of the minor child, Father's motion to modify the judgment regarding custody to make him the primary physical custodian, and Mother's relocation request and request for child support. The trial court denied Mother the right to relocate with the minor child, which is the only issue on appeal.[1] Although we are generally reluctant to disturb trial court determinations in a child custody case, we are left with a firm conviction that the trial court erred in denying Mother permission to relocate with the minor child. The denial of the relocation is troubling in many aspects. We find substantial evidence does not support the denial for several reasons which, when combined, leave us convinced that the trial court erred.

Father and Mother were divorced in 1999 and Mother was designated as the "primary physical custodian" of the one minor child.[2] Father was ordered to pay two hundred forty dollars per month in child support. Mother contended in her motion for contempt that Father never paid any of the child support. In 2004, Mother and Father agreed to modify the decree to increase the summer visitation with Father and to terminate the child support obligation. Both parties testified that the agreement was reached because Father was having financial problems and Mother agreed to help him out. Both parties testified that Father and Mother cooperated with visitation prior to the modification. In fact, Mother and Fa-

---

1. Mother also contends that the trial court failed to rule on her claim for contempt against Father for noncompliance with the dissolution decree. A review of the transcript and pleadings reveals that the court did not address her claim for contempt. Likewise, we do not address the contempt claim.

2. "Missouri's statutory scheme does not allow for an order granting 'primary physical custody.'" *Speer v. Colon,* 155 S.W.3d 60, 62 (Mo. banc 2005). The phrase "primary physical custody" is a misnomer and its use should be avoided. *Wood v. Wood,* 193 S.W.3d 307, 311 (Mo.App. E.D.2006).

ther's new wife were on friendly terms, shopping together and addressing issues concerning the parties. The minor child spent time before and after school with Father when the child attended a school closer to Father's house. The court modified the decree on November 8, 2004, allowing Father to have visitation during the entire summer and eliminating the child support obligation.

Father placed the judgment of modification in a picture frame and subsequently denied visitation between Mother and child during the summer. He did so because he interpreted the modification order to mean that Mother was not entitled to any visitation during the summer because summer visitation was not specifically addressed in the modification order; Mother, on the other hand, stated the parties had agreed to alternating weekends for Mother during the summer and interpreted the order to that effect. Although Mother tried to arrange visitation with the child, Mother was denied visitation for forty-one consecutive days and for her wedding, which took place on one of Father's weekends. Father claimed at trial that he left the decision to his ten-year-old son whether and when to visit with his Mother and, apparently, Mother's phone requests were not sufficient. Father testified that if Mother would have "come to my house and asked me [for visitation], I'd have told her yes." Later, he claimed "if she'd come to the house and asked me, except on the phone, I probably would have given him to her. It was up to [the child], because he didn't want to go he told me."

Additionally, Father admitted to denigrating Mother on at least one specific occasion in front of the child when Mother came to pick up the child; he admitted starting an argument with Mother's fiancé on that occasion. Father claims the argument was started by Mother because she was trying to get the child to the car.

Father thought the child did not want to go "because he wanted to see firecrackers because she don't buy them." Mother wanted to take the child prior to eleven o'clock p.m. so the child would not be up late and they could travel early the next day.

Mother married her fiancé on July 23, 2005, and made plans to move with the child to Columbus, Kansas, which is approximately fifty-five miles from her home in Neosho, Missouri. Mother's new husband has two children, one of whom was going to be a senior in high school in Columbus. Both Mother and her husband intended to continue working in their current jobs. Mother had been renting from her own father, but due to concerns about the child's asthma and her father's smoking, she resided at the time of trial with her grandmother. Mother and her current husband had separate residences while they awaited the decision as to whether she could relocate.

The court found it was not in the best interest of the minor child that his residence be relocated to Columbus, Kansas, denied a change in circumstances regarding child support and ordered no support to be paid, but modified the visitation schedule to be more specific about some of the holidays and summer visitation. The court stated there was no allegation that the desire to relocate was made in bad faith, but denied the move:

> based upon the number of the child's relatives residing in the Neosho, Missouri, area, including his father, and his attachment to them; the child's present adjustment to his home, school and community; and the fact that the relocation would prohibit [Father] from continuing his active role in the child's life, in addition to his specific visitation.

We will uphold the trial court's ruling so long as it is supported by substantial evidence, is not against the weight of the

evidence, and does not erroneously declare or apply the law. *Melton v. Collins*, 134 S.W.3d 749, 752 (Mo.App. S.D.2004). First, and not necessarily in order of importance, Mother has been solely financially responsible for the child. Mother testified that she and her husband have been forced to keep two separate households in order for both to keep their jobs and allow her husband's daughter to complete her senior year in Columbus, Kansas. Mother contended Father did not pay child support when he was ordered to do so, the judgment of dissolution was modified due to Father's financial circumstances, and Father has now been relieved of any financial responsibility for the child by the denial of Mother's request for child support in this judgment. Even though Father had been ordered to keep health insurance in effect for the benefit of the child, Mother claimed he failed to do so.[3]

Second, Mother has clearly been more than cooperative to ensure that Father had significant time with his son; Father did not reciprocate. Father claimed that a ten-year-old child determines when and whether to visit his parent. That is not appropriate parenting; allowing the child to take the role of decision-maker about when and how often to visit either parent places unnecessary stress on the child. Father had the responsibility to encourage the child to respect his Mother and to insist on visitation; Mother has fulfilled that role in being respectful of Father's relationship with the child. We find nothing in the record to support the trial court's finding that relocation would prohibit Father from continuing his active role in the child's life. Father admits Mother is a good mother, which includes the parent's willingness to provide opportunity for both parents to have a meaningful relationship with the child. The proposed relocation will not reduce Father's visitation time but it will enhance Mother's time with the child.

Next, although the court cited the extended families on both sides as a reason to deny the relocation, Father testified that the child does not spend a lot of time with his extended family members except on weekends. The family members that the child does spend time with are on Mother's side and Mother testified that she would bring the child to visit her family. She also stated she would bring the child to visit with his Father when she visited Neosho. Clearly, her past behavior is evidence of her willingness to provide that contact with relatives and with Father.

Lastly, the distance Mother seeks to relocate is only fifty-five miles from the parties' current location. "In our highly mobile society it would be unrealistic to inflexibly confine a custodial parent to a fixed geographical area if removal to another jurisdiction was consistent with the best interests of the minor child...." *Weaver v. Kelling*, 53 S.W.3d 610, 615 (Mo.App. W.D.2001) (quoting *In re Marriage of Greene*, 711 S.W.2d 557, 564 (Mo. App. S.D.1986)). Point I is granted.

The judgment denying Mother's motion to relocate is reversed and remanded to the trial court with instructions to grant Mother's motion to relocate.

PARRISH and SCOTT, JJ., concur.

---

**3.** Father testified that he received benefits free of charge through the Ottawa Tribe in Miami, Oklahoma, and at the hospital in Claremore. Whenever needed, he took the child for treatment. Father also testified that it would be "pricey" for him to secure private health insurance and that Mother covered the child on a family plan through her employer's health insurance because "one kid or five kids, it's all the same price."