**Chad Hunter HENRY,**
**Petitioner/Appellant,**

v.

**Kristina Robin HENRY,**
**Respondent/Respondent.**

No. SD 30897.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 2, 2011.

Stephen R. Southard, Cape Girardeau, MO, for Appellant.

H. Marvin Gilmore, Sikeston, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Presiding Judge.

Chad Hunter Henry ("Father") appeals a judgment denying Father's motion to prevent relocation (and other motions as well), and permitting Kristina Robin Henry's ("Mother") relocation with their son. We affirm the judgment of the trial court.

### Facts and Procedural Background

On April 22, 2008, the marriage of Father and Mother was dissolved. There

was one child born of the marriage—Tyler Furgison Henry ("Tyler")—born March 11, 2006. Pursuant to the court's original judgment and parenting plan, Father and Mother shared joint legal and joint physical custody of Tyler. At the time of the dissolution, Father and Mother both lived in New Madrid County, Missouri. The court's initial judgment of dissolution and parenting plan provided parenting time for Father from 5:00 p.m. on Friday until 5:00 p.m. on Sunday, every Tuesday night from 5:00 p.m. until 9:00 a.m. on Wednesday, and 5:00 p.m. on Wednesday through 9:00 a.m. on Thursday. In addition, Father had visitation for major holidays and events. On September 1, 2009, Mother moved to Memphis, Tennessee, with Tyler. Father initially objected to the move to Memphis, but later agreed. Father and Mother adjusted the visitation schedule once Mother moved to Memphis, but the parties disputed the exact adjustment to that schedule.

Mother began employment in October 2008 at the Memphis Recovery Center earning $15.00 an hour. She kept that employment until January 2009. In January 2009, Mother began employment with the City of Millington.

On October 6, 2009, Mother met Mike McCormick ("McCormick") and began a romantic relationship with him. McCormick was employed as an attorney with a law firm in Memphis. Mother and McCormick began discussing marriage in December 2009.

In late January 2010, Mother was notified that the house she was renting in Millington, Tennessee, was being foreclosed upon and she needed to move immediately. Mother testified that if forced to move, she did not have funds to pay the first month's rent, utility deposit, security deposit, or movers. Around the same time, McCormick's law firm offered him a promotion if he agreed to work in their Atlanta, Georgia, office. McCormick had previously lived in Alpharetta, Georgia—an Atlanta suburb—and owned a house there.

In February 2010, McCormick accepted his firm's promotion, which required his immediate move to Atlanta, Georgia. At the same time, Mother made the decision to marry McCormick and move with him to Georgia, even though she had only known him for three-and-a-half months. At the time of trial, Mother and McCormick were engaged to be married on October 23, 2010.

Mother and McCormick met with Father on February 7, 2010, at Father's residence and Mother provided Father a verbal two-week notice that she intended to relocate to the Atlanta area with Tyler and McCormick. Father informed Mother that he was not in agreement with the relocation.

Father testified that approximately a week later, he received a letter dated February 7, 2010, informing him that Mother would be relocating to Alpharetta, Georgia, on March 1, 2010—an approximate two-week notice of the relocation. Mother's letter was not certified, did not provide Father with an address or phone number, and did not provide the rationale for Mother relocating to the Atlanta area, as required by the judgment and parenting plan and section 452.377.[1]

On February 25, 2010, Father filed a motion to modify judgment, a proposed parenting plan, motion for change of judge, and motion to prevent relocation. The latter motion did not include an affidavit as set forth in section 452.377.7. On March 1, 2010, despite Father's objections,

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

Mother relocated to Alpharetta, Georgia, with Tyler.

On April 5, 2010, Father filed a "Motion for Contempt." On April 21, 2010, Mother and Father stipulated to a temporary visitation schedule. The order provided Father with visitation for a period of ten days, alternating every ten days with Mother. Mother agreed to be responsible for all transportation costs.

On July 29, 2010, the trial court conducted a hearing on all pending motions. On August 17, 2010, "Findings of Facts, Conclusions of Law and Final Judgment" was entered denying Father's "Motion Seeking an Order to Prevent Relocation," Motion for Contempt, and "Motion to Modify." The trial court's findings and conclusions focused on the issue of "whether [Mother] should be permitted to relocate to Georgia. . . ." The trial court also found "that exigent circumstances did exist which prohibited [Mother] from giving 60 days notice of relocation to [Father]. . . ." The judgment ordered the parties to continue to share joint legal and joint physical custody of Tyler, and adopted a minimum schedule for Father's parenting time, which included seven weeks in the summer, spring break, most three-day holiday weekends, any other "long" weekend according to the school schedule, and one-half of Christmas vacation. Mother was also ordered to provide all transportation costs for Tyler's visits back to Missouri. Father timely appealed.

Father argues the trial court erred in that: (1) Mother did not meet the requirements of section 452.377 in that exigent circumstances did not exist; (2) the trial court's finding that exigent circumstances existed to justify waiver of the sixty-day notice requirement was against the weight of the evidence; (3) the judgment was against the weight of the evidence as to the best-interests finding; and (4) the best

interests of Tyler would be better served by placing him with Father. The issues pertinent to our resolution of this appeal are:

1. Was there reversible prejudice to Father from Mother's failure to meet the requirements of section 452.377?
2. Was the trial court's best-interests finding erroneous?

## Standard of Review

■ This Court's review of a trial court's judgment denying or granting a motion to relocate a minor child is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Mantonya v. Mantonya*, 311 S.W.3d 392, 395 (Mo.App. W.D. 2010). Therefore, we must affirm the trial court's ruling if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Mantonya*, 311 S.W.3d at 395. We view the evidence in the light most favorable to the trial court's judgment, disregarding all contrary evidence and inferences. *Id.* An appellate court should not set aside a judgment as being against the weight of the evidence, unless it firmly believes that the judgment is wrong, or the judgment is clearly against the logic of the circumstances. *Id.* "A trial court's determination in a child custody matter is given more deference than in any other type of case." *Id.*

## Points I and II: No Prejudice Resulted From Mother's Failure to Give Proper Notice

Father's first point on appeal alleges the trial court erred in denying Father's motion to prevent relocation because Mother did not satisfy the requirements of section 452.377 to relocate Tyler in that exigent circumstances did not exist. Because this first point pre-supposes exigent circum-

stances did not exist, we begin by addressing Father's second point alleging error in the trial court's finding of exigent circumstances that justified a waiver of the notice requirement.

Section 452.377 attempts to set forth a more detailed procedure for dealing with relocations to help ensure relocating parents and nonrelocating parents are treated consistently, equally, and fairly, while protecting the best interests of the child. Section 452.377.2 provides:

Notice of a proposed relocation of the residence of the child, or any party entitled to custody or visitation of the child, shall be given in writing by certified mail, return receipt requested, to any party with custody or visitation rights. Absent exigent circumstances as determined by a court with jurisdiction, written notice shall be provided at least sixty days in advance of the proposed relocation. The notice of the proposed relocation shall include the following information:

(1) The intended new residence, including the specific address and mailing address, if known, and if not known, the city;

(2) The home telephone number of the new residence, if known;

(3) The date of the intended move or proposed relocation;

(4) A brief statement of the specific reasons for the proposed relocation of a child, if applicable; and

(5) A proposal for a revised schedule of custody or visitation with the child, if applicable.

The procedural requirements in section 452.377, including the requirements for the initial notice, motion and affidavit opposing relocation, and required response, appear to merely provide a mechanism for promptly framing the merits of the relocation issue for the parties and the trial court. As explained by our supreme court in *Heintz v. Woodson*, 758 S.W.2d 452 (Mo. banc 1988):

Procedural rules are but the means through which we seek to ensure the fair and orderly resolution of disputes and to attain just results. They are not ends in themselves. For this reason, we do not generally consider noncompliance with rules or statutory procedures to warrant reversal in the absence of prejudice.

*Id.* at 454. This prejudice principle was applied to determine the effect of noncompliance with the notice provision of section 452.377.2 in *Kell v. Kell*, 53 S.W.3d 203 (Mo.App. E.D.2001).[2] and *Weaver v. Kelling*, 53 S.W.3d 610 (Mo.App. W.D.2001).[3]

---

2. In *Kell*, mother filed a notice of proposed relocation which was served upon father's counsel and sent by regular mail to father instead of by certified mail, as required by section 452.377.2. Father's counsel filed a motion to dismiss based upon mother's noncompliance with the statute's notice provisions. The trial court denied the motion and ruled for mother on the merits. On appeal, father argued that the trial court erred by not dismissing the action because of mother's noncompliance. *Id.* at 205–09. The eastern district of this court denied relief because "[f]ather had a full hearing on the issue of the proposed relocation prior to the relocation. [He] has not demonstrated he was prejudiced or was unable to prepare for the relocation hearing." *Id.* at 209.

3. In *Weaver*, mother also failed to send the notice by certified mail. Father filed a motion to dismiss based upon the deficient notice. The trial court denied the motion and ruled for mother on the merits. On appeal, father argued that the trial court erred in allowing relocation because mother's notice was deficient. *Id.* at 616. The western district of this court denied relief.

Because [f]ather received actual notice of [m]other's intent to relocate to Texas with the children and had the opportunity to challenge the relocation, and did, [f]ather

While our analysis focuses on Mother's noncompliance with section 452.377 and any resulting prejudice to Father, it is important to note that Father also failed to fully comply with section 452.377 in that his motion to prevent relocation was not "accompanied by an affidavit setting forth the specific factual basis supporting a prohibition of the relocation." § 452.377.7.

Here, Mother provided verbal and written notice of the relocation to Father, but it is undisputed that the notices did not include the required information and were not given sixty days prior to relocation.[4] The trial court, however, found exigent circumstances excused Mother's compliance with section 452.377. While Father alleges error in the trial court's exigency finding and seeks relief in part on this basis, we need not reach that issue because we find all parties had an opportunity to fully litigate this issue on the merits, and there was no prejudice by either party's failure to comply with the statute.

■ The clear intent of section 452.377 is to "stay" a parent's relocation, once a motion seeking to prevent relocation is timely filed, until relocation is subsequently permitted by the court. *Mantonya*, 311 S.W.3d at 400. While we disapprove of Mother's behavior and believe this was a clear lack of compliance with the statute, we are constrained by the express penalties established for such violations of section 452.377 and by this Court's standard of review. Section 452.377.12 provides that any violation of the statute, which would include a failure to provide the requisite notice, may be deemed a change of circumstance allowing a modification of custody and may serve as a basis for con-

tempt; in fact, a trial court in another case might be justified in reaching that conclusion when faced with similar evidence. We do not do so here. The language does not require automatic modification of custody in favor of Father; rather it merely allows for such modification if the trial court finds that to be in the best interests of the child. Father fully litigated this issue before the trial court. While the trial court could have found Mother in contempt based on her actions, it was not required to do so and Father makes no such request in his appeal.

Additionally, failure to provide the requisite notice must be considered by the court as "(1) [a] factor in determining whether custody and visitation should be modified; (2)[a] basis for ordering the return of the child ..."; and (3) sufficient cause to order the person relocating with the child to pay the objecting party's reasonable attorney's fees and expenses. § 452.377.5. Here, the trial court explicitly noted that factor seven (intention of either parent to relocate the principal residence of the child) weighed in favor of Father and noted that Mother in fact relocated Tyler to Georgia prior to the hearing. Again, the trial court heard the merits of these issues and decided it was in Tyler's best interests to relocate to Georgia. Thus, this Court is without authority to grant such relief.

We find Father has not shown any prejudice resulting from Mother's noncompliance because Father was fully prepared to litigate the relocation issue on the merits, and did so. Additionally, we find no appropriate relief available and we do not

did not suffer any prejudice as a result of [m]other's failure to follow the technical requirements of the notice statute. Father may not, therefore, complain of the technical noncompliance of the statute. *Id.* at 617.

4. Mother failed to: (1) send the notification by certified mail; (2) provide an address; (3) provide a phone number; and (4) provide a rationale for the relocation.

conclude a reversal is warranted based on this point. Points I and II are denied.

### Point III: Best–Interests Finding Not Against Weight of Evidence

Father's third point alleges the trial court's finding that the relocation was in the best interests of Tyler is against the weight of the evidence in that the parenting plan denies Father frequent, continuing, and meaningful contact with Tyler. We can reverse on this basis only when we firmly believe the judgment is wrong. *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App. S.D.2010). *See also Mantonya*, 311 S.W.3d at 395. "Weight of evidence" means weight in probative value, not the quantity or amount of evidence. *Houston*, 317 S.W.3d at 186. We consider evidence favorable and contrary to the judgment, but defer to the trial court's credibility determinations, explicit or implicit. *Id.* at 187.

■ Section 452.377 requires the court to determine that the relocation: "(1) is in the best interests of the child, (2) is made in good faith, and (3) if ordered, complies with the requirements of subsection 10." *Stowe v. Spence*, 41 S.W.3d 468, 469 (Mo. banc 2001). Section 452.377.10 requires frequent, continuing and meaningful contact with the nonrelocating parent and the allocation of transportation expenses. The trial court is to be guided by all relevant considerations consistent with the best interests of the child in deciding whether the relocation would be in the best interests of the child. *Robinson v. Robinson*, 338 S.W.3d 868, 872 (Mo.App. W.D.2011).

■ Here, Father specifically argues that the trial court did not give enough weight to the "significant reduction" in his parenting time resulting from the relocation. The trial court acknowledged that relocation would make it more difficult for Father to exercise his visitation. Never-

theless, the trial court found that the parenting plan complied with section 452.377.10 by providing Father with custody, at a minimum, of which included seven weeks in the summer, spring break, most three-day holiday weekends, any other "long" weekend according to the school schedule, and one-half of Christmas vacation. Notably, the trial court ordered all transportation costs to be paid by Mother, which Mother does not challenge. Additionally, the parenting plan allows Father contact via telephone, email and through the internet at all reasonable times. We agree that this minimum allotted time provides for frequent, continuing, and meaningful contact.

■ In our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area if removal to another area is consistent with the best interests of the minor child. *In re the Marriage of Williams*, 220 S.W.3d 858, 861 (Mo.App. S.D.2007). Disputes concerning the relocation of a child must be resolved "based on the unique and particular facts of the case presented to the trial court." *Mantonya*, 311 S.W.3d at 402. Our deference in relocation cases "reflects the trial court's superior position to evaluate the facts in each case, and to assess, based on those unique facts, the best interests of the children." *Id.* We recognize that frequent, continuing, and meaningful contact is not limited to physical contact and can include telephone calls or other communications, and that a trial court may properly permit removal of a child even where removal will make visitation more difficult for the noncustodial parent. *Fohey v. Knickerbocker*, 130 S.W.3d 730, 738 (Mo.App. E.D.2004).

Father also points to the limited duration of Mother's relationship with McCormick prior to relocating, and the fact that

Mother moved without securing employment, as additional evidence weighing against the trial court's finding. While Mother admittedly relocated without securing employment, McCormick testified he had been financially supporting Mother since January 2010, and was employed and earning $200,000 per year. Mother testified this financial support provided an opportunity for Mother to work only part-time in Georgia and thus spend additional time with Tyler. "And, we recognize that judicial permission to remove the child from the state is warranted where the custodial parent demonstrates a need to move from the state in order to achieve employment and financial betterment which will subserve the best interest[s] of the child." *Fohey*, 130 S.W.3d at 736. We agree the evidence indicates Mother's decision to relocate and rely financially on a man she had only been acquainted with for a short period of time raises obvious concerns, especially when the best-interests determination is largely dependent on the benefits resulting from McCormick's financial contributions to Mother and Tyler. However, the evidence at trial—viewed in the light most favorable to the judgment—indicated that at the time of trial, Mother and McCormick were involved in a stable relationship with plans to marry in the near future and that Tyler was benefiting from this relationship, in part, by increasing his standard of living. This evidence includes McCormick's testimony that he had already made Mother the beneficiary under his 401(k) and life insurance, and authorized her as a user on his credit cards, indicating his intent to continue a relationship and to continue to provide financial support to Mother and Tyler.

In making its best-interests determination, the trial court noted the following circumstances weighed in favor of Mother: (1) Mother's parenting plan proposed joint legal and joint physical custody, whereas Father's provided for sole physical custody; (2) Mother had been the primary caretaker for Tyler since birth and had been an attentive and responsible parent; (3) Mother's parenting plan showed she was more likely than Father to allow Tyler frequent, continuing, and meaningful contact with the other parent; (4) Tyler would receive educational, health, and leisure opportunities at least equal to those available in Tennessee; (5) Father failed to fully exercise his visitation, including week-to-week summer visitations in 2008 and 2009 when Tyler lived in Missouri; (6) Mother's proposal provided opportunities for Tyler to preserve and foster his relationship via access to a home computer; (7) relocation would benefit Tyler economically and emotionally as he would have a higher standard of living; (8) the travel outlined in Mother's parenting plan was not so excessive as to render relocation adverse to Tyler's best interests; and (9) the approved parenting plan provided each parent with frequent, continuing and meaningful contact with Tyler. A review of the record reveals these findings are supported by substantial evidence.

Accordingly, in giving deference to the trial court's superior position to evaluate the facts, we are not firmly convinced the trial court's best-interests finding is wrong.[5] Therefore, Point III is denied.

### Point IV: Best–Interests Finding Not Erroneous

Father's final point also contends the trial court's best-interests finding was er-

**5.** We note that Father is free to revisit the issue of Tyler's location by a subsequent motion to modify if he is convinced the evidence justifies a modification of the custody arrangement.

roneous. Father claims the trial court erred in denying his motion to modify because under section 452.375.2, it is in Tyler's best interests to be placed with Father. In deciding if relocation was in Tyler's best interests, the trial court considered all of the factors listed in section 452.375.2, as well as other factors it considered relevant. Similar to the claims set forth in Father's Point III, Father again argues that Mother's proposed parenting plan does not provide frequent, continuing, and meaningful contact with Tyler. The only additional claim warranting further discussion is Father's claim that the trial court inappropriately disregarded the effect on Father's extensive extended family in Missouri. The trial court specifically noted that the adjusted custody schedule permitted Tyler to continue relationships with these relatives even after relocation to Georgia. However, the fact that Tyler will miss out on time with extended family in Missouri does not necessarily make the Georgia move against his best interests. *See Ratteree v. Will*, 258 S.W.3d 864, 870 (Mo.App. E.D.2008) (stating that "[i]t was not against the weight of the evidence for the trial court to find that despite the deprivation of [child's] time with his Father and extended family in St. Louis, it was in [child's] best interests to relocate").

Again, our deference in relocation cases "reflects the trial court's superior position to evaluate the facts in each case, and to assess, based on those unique facts, the best interests of the children." *Mantonya*, 311 S.W.3d at 402. While we might not necessarily have been persuaded that the trial court should have granted Mother's relocation request, we defer to the trial court's decision in such cases even if the evidence could support a different conclusion. *Robinson*, 338 S.W.3d at 876. Considering all of the relevant factors as discussed in Point III, we find the trial court did not err in determining that the move to Georgia was in Tyler's best interests and allowing Mother to relocate Tyler. While, as a general rule, it is *significantly* more desirable to have both parents in the same community in a joint physical custody arrangement, we cannot say that in this case we are firmly convinced that Tyler's welfare requires some other disposition. Point IV denied. The judgment of the trial court is affirmed.

BARNEY and SCOTT, JJ., Concur.