**In re: Michael Gannon STEGGALL, a Minor.**

**Amanda J. Byrd, Appellant,**

**v.**

**Michael S. Steggall, Respondent.**

**No. WD 70185.**

Missouri Court of Appeals, Western District.

Oct. 27, 2009.

---

Thomas R. Summers, St. Joseph, MO, for Appellant.

Jason C. Soper, St. Joseph, Christina E. Gondring, Kansas City, MO, for Respondent.

Before Division III: THOMAS H. NEWTON, Chief Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

MARK D. PFEIFFER, Judge.

Amanda Byrd (Mother) appeals the trial court's judgment denying her motion to relocate her child's residence to Iowa. In her sole point on appeal, Mother claims that the trial court erred in denying her motion to relocate her child's residence to Iowa because she argues the record at the evidentiary hearing establishes that relocation is in his best interest.

Although not married, Mother and Michael Steggall (Father) had a child in 2001 and they named him Gannon. In 2003, Mother filed a motion seeking custody of Gannon. The trial court entered judgment awarding Mother sole physical custody of Gannon and granted Father visitation on Tuesdays, Thursdays, alternating weekends, and various holidays. Both parties maintained their residences in St. Joseph, Missouri.

In 2008, Mother filed a motion to relocate Gannon's residence from St. Joseph to Bloomfield, Iowa, so she and Gannon could move in with her current fiancé. The trial court conducted an evidentiary hearing on the motion on August 7, 2008. On August 27, 2008, the trial court entered judgment denying the motion. This appeal follows.

In her sole point on appeal, Mother claims that the trial court erred in denying her motion to relocate Gannon's residence to Iowa because the record at trial establishes that relocation is in Gannon's best interest. Specifically, she claims that the record establishes that relocation is in Gannon's best interest because, if they moved, Mother would be able to marry her fiancé, Mother would become a stay-at-home mother, and they would provide him with a loving home.

Our review of the trial court's judgment denying or granting a motion to relocate a minor child is governed by the standard in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Vaughn v. Bowman*, 209 S.W.3d 509, 511 (Mo.App. E.D.2006). We, therefore, will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* In reviewing the trial court's judgment, we view the evidence and all reasonable inferences from the evidence in the light most favorable to the trial court's judgment. *Id.* In doing so, we disregard all contrary evidence and inferences. *Id.* We will not reverse the trial court's judgment on the basis that it is against the weight of the evidence unless we have a firm basis for concluding that the judgment is wrong or that it is against the logic of the circumstances. *Id.*

Section 452.377.9 governs the relocation of a child and requires that the party seeking to relocate the child prove that the proposed relocation is made in good faith and is in the best interest of the child. *See also id.* at 512. To determine if the relocation is in the best interest of the child, the trial court is required to look at the factors in section 452.375.2, which govern the trial court's determination of custody. *Id.* These factors are:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

§ 452.375.2.

 In its judgment, the trial court is not required to set out the factors it relied upon in determining whether or not the relocation is in the best interest of the child. *Vaughn*, 209 S.W.3d at 512. We presume that the trial court considered the evidence in light of all the statutory factors even when the trial court fails to mention the factors in its judgment. *Id.*

In its judgment, the trial court concluded that Mother made her request to relocate Gannon in good faith but that it is not in Gannon's best interest to relocate because it would significantly reduce his time with Father. The trial court supported its judgment with the following findings:

The second tier of the test under Section 452.377.9 RSMo is whether or not the proposed relocation would be in the minor child's best interest. The Court elects to weigh Gannon's best interest in light of the eight statutory factors recited in Section 452.375.2 RSMo. In doing so, the Court makes the determination that the Petitioner has not carried her burden of proving the relocation would be in Gannon's best interest. In making said determination, the Court makes the following findings:

a) that all four of the main adults in Gannon's life, his mother (Petitioner), mother's fiancé John McAllister, Gannon's father (Respondent), and his wife Sandra Steggall, love this child and wish to spend considerable time with him;

b) that Gannon currently enjoys frequent and liberal court-ordered visitation with his father and his father's family (wife Sandra, Son Brock and Daughter Shay), which includes considerable visitation during the week;

c) if allowed to relocate to Bloomfield, Iowa, all week-day visitation would be lost between Gannon and his father, and other visitation times would be encroached upon by travel time, and the Court was presented no evidence to suggest that such a restriction on the Respondent's visitation should be allowed, and the Court finds that it is not in Gannon's best

interest to spend less time with Respondent;

 d) Gannon has established a relationship with his step-family (Sandra, Brock, and Shay Steggall), and spending less time with them, which is what would occur should the relocation be allowed, is specifically not in Gannon's best interest.

On appeal, Mother claims that the trial court erred in entering its judgment denying her motion to relocate Gannon's residence to Iowa because the record showed that she and her fiancé would provide Gannon with a loving and stable home in Iowa. In making this argument, however, Mother misunderstands the trial court's judgment. The trial court did not deny her motion because it concluded that Mother and her fiancé would fail to provide Gannon with a loving and stable home or that Father would provide Gannon with a more loving and stable home. In fact, the trial court made an express finding that Mother, her fiancé, Father, and his wife loved Gannon and wanted to spend considerable time with him. In other words, the trial court found that, under section 452.375.2(1)—(3), which required the trial court to examine the wishes of the parents and their ability to perform their parental duties, both parents were willing to actively perform their parental functions and that it was advantageous for Gannon to continue to have meaningful interaction with both parents.

The trial court denied Mother's motion, however, because it found that, under section 452.375.2(2) and (4), Mother's proposed relocation of Gannon's residence to Iowa would reduce Father's visitation with Gannon to the point where it would prevent Father from having frequent, continuing, and meaningful contact with Gannon. The trial court's finding on this issue is supported by substantial evidence and is not against the weight of the evidence.

The record at trial establishes that, while Mother has sole physical custody of Gannon, Father maintains an active role in Gannon's life. In fact, under the current custody arrangement, Gannon divides his time between Mother and Father equally. Father has custody of Gannon on Tuesdays and Thursdays while Mother has custody of Gannon on Mondays and Wednesdays. The parties alternate custody on the weekends and holidays. The record also establishes that, when Father has custody of Gannon, Gannon spends a substantial amount of time with Father's family, which includes his wife and two other children. The record also shows that Gannon had acclimated himself well with Father's family and has grown accustomed to referring to Father's wife as his "mommy" and referring to their children as his brother and sister. From this evidence, the trial court had a reasonable basis for concluding that Father had frequent, consistent, continuing, and meaningful contacts with Gannon and that these continued contacts were in Gannon's best interest. Most importantly, the trial court was presented with evidence that the current parenting plan is working for Gannon, the most important person in the trial court's analysis.

The trial court also had a reasonable basis for concluding that Mother's relocation to Iowa would significantly decrease Gannon's meaningful contact with Father. And, while the trial court reasonably concluded that Mother's motion was not made in bad faith, the effect of the motion was to "fix" a parenting plan that was not "broken," primarily to enable Mother to seek a more fulfilling quality of life for herself. While this court is sympathetic to Mother's legitimate personal ambition, Mother's ambition can only co-exist in this setting if it also is in Gannon's best interest to have

less meaningful contact than he currently has with his father. Trial courts do not make these decisions lightly, and it is clear from the record and the trial court's judgment that there was substantial evidence in the record and that it was not against the weight of the evidence for the trial court to conclude that the proposed relocation was not in Gannon's best interest.

In her motion, Mother sought to relocate Gannon's residence from St. Joseph, Missouri, to Bloomfield, Iowa, which is somewhere between 150 to 175 miles from St. Joseph. Because of this distance, the trial court had a reasonable basis for concluding that if it granted the motion, Father would no longer have weekday visitation with Gannon on Tuesdays and Thursdays, something Gannon had experienced his entire life and to which he had grown accustomed. And, in fact, at the evidentiary hearing, Mother conceded that her new custody and visitation plan would restrict Father's visitation with Gannon to alternating weekends and holidays. The trial court had a reasonable basis for concluding that this was a substantial and meaningful reduction in the quantity and quality of Gannon's visitation time with Father. *Vaughn*, 209 S.W.3d at 513. The trial court was also free to find that it was not in Gannon's best interest to spend less time with Father and Father's family. This alone was a sufficient reason for the trial court to deny Mother's motion to relocate. *Id.*

■ Furthermore, although the trial court did not make an express finding on the issue, there was evidence in the record to support a finding that, under section 452.375.2(5), which requires the trial court to look at the child's adjustment to school, Gannon should not relocate to Iowa. Father's wife, an assistant principal in the St. Joseph School District, testified that, due to her employment, she was able to place

Gannon in one of the best schools in the district. She also testified that Gannon's current school was superior to the school that Gannon would attend if he moved to Iowa. The trial court was free to believe this evidence. *Nelson v. Nelson*, 195 S.W.3d 502, 513 (Mo.App. W.D.2006). This testimony provided the trial court with an additional basis for concluding that Gannon should not relocate to Iowa and supports the trial court's judgment.

At oral argument, in support of her position, Mother refers us to *Wightman v. Wightman*, 295 S.W.3d 183 (Mo.App. E.D. 2009), for the proposition that the trial court erred in denying Mother's motion to relocate merely because the distance between St. Joseph and Iowa would adversely affect Gannon's visitation time with his father. In *Wightman*, however, the facts are clearly distinguishable from the present case.

In *Wightman*, the mother filed a motion to relocate her children's residence from Missouri to North Carolina so that she could seek employment in North Carolina. 295 S.W.3d at 183. The father opposed the relocation on the basis that it would prevent him from having frequent and meaningful contact with the children. *Id.* The trial court denied the motion, partially, on the basis that the move would prevent the children from having contact with their father and other relatives who live in St. Louis. *Id.*

On appeal, the Eastern District reversed the trial court's judgment and concluded that, under the facts of the case, the great weight of the evidence demonstrated that it was in the children's best interest to relocate to North Carolina. The Eastern District concluded that the evidence at trial established that the father was consistently delinquent in child support obligations, had been inconsistent in exercising his right of visitation with his

children when they resided in Missouri,[1] the mother could not find consistent full-time employment in Missouri, and the best chance for her to find employment was in North Carolina. *Id.* at 187–89. In addressing the father's argument that the distance between Missouri and North Carolina would deprive him of contact with his children, the appellate court noted that the mere distance between the states did not *automatically* make the relocation against the best interest of the children because "in today's highly mobile society, it is unrealistic to confine a parent to one geographic location." *Id.* at 188. Conversely, there is nothing in the *Wightman* opinion suggesting that the Eastern District is attempting to create a *per se* rule that today's "highly mobile society" means that a trial court may not take the distance of a proposed relocation into consideration when weighing the evidence on the topic of what is in the best interest of the child. Instead, under the facts that the *Wightman* court was presented with, the Eastern District concluded that the great weight of the evidence reflected that the proposed relocation to North Carolina would not materially alter the Father's historically "sporadic" visitation with the children but would have the very positive impact of permitting the children to be in a much more emotionally positive and financially stable condition. Accordingly, on those facts, the Eastern District reversed the trial court's denial of Mother's motion to relocate. *Id.* at 194.

As we noted above, unlike the father in *Wightman,* the undisputed evidence in our case shows that Father has meaningful contact with Gannon and has never gone a significant time without seeing him, there is no allegation of child support delinquency, and there is certainly no allegation that Father has ever acted in any manner that is antagonistic to Mother or her fiancé nor in any manner that is detrimental to Gannon's positive relationship with *both* of his parents. And, as we noted above, the trial court also had a reasonable basis for concluding that the distance from Iowa and Missouri, although not as great as the distance between North Carolina and Missouri, would adversely affect Gannon's meaningful and important contacts with his father because it would eliminate all weekday visitation and reduce his visitation time on weekends.

As we noted above, under our standard of review, we will not reverse the trial court's judgment on the basis that it is against the weight of the evidence unless we have a firm basis for concluding that the judgment is wrong or that it is against the logic of the circumstances. *Vaughn,* 209 S.W.3d at 511. In conducting our review, we are required to view the evidence in a light most favorable to the trial court's judgment. *Id.* In this case, in a light most favorable to the judgment, the evidence at the evidentiary hearing supports the trial court's decision to deny Mother's motion. We, therefore, cannot say that the trial court's judgment is wrong or that it is against the logic of the circumstances. There is substantial evidence in the record to support the trial court's judgment. There is nothing in the record to suggest that the trial court's judgment is against the weight of the evidence.

Accordingly, we affirm the trial court's judgment denying Mother's motion to relocate Gannon's residence.

1. At 189 of the *Wightman* opinion: "The record reveals that Father's visitation, in contrast, has been sporadic. Moreover, his current arrearage aside, Father has always been behind in his child support payments and has twice been prosecuted for non-support. He was also convicted of filing a false report after he accused Stepfather of molesting one of the children."

THOMAS H. NEWTON, Chief Judge, and KAREN KING MITCHELL, Judge, concur.