**Chad MANTONYA, Respondent,**

v.

**Jamie D. MANTONYA, Appellant.**

**No. WD 71368.**

Missouri Court of Appeals, Western District.

June 8, 2010.

J. Eric Mitchell, Clinton, MO, for respondent.

William E. Simmons, Clinton, MO, for appellant.

Before Division One: KAREN KING MITCHELL, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Jamie Collins, formerly Mantonya, ("Mother") appeals from the trial court's judgment which denied her request to relocate from Clinton, Missouri, to Urich, Missouri. The trial court found that Mother failed to sustain her burden to

prove that the proposed relocation was made in good faith and was in the best interests of the children. We affirm.

## Facts and Procedural History

The marriage of Chad Mantonya ("Father") and Mother was dissolved on July 31, 2007, in Henry County, Missouri. Mother and Father shared joint legal and physical custody of their two children, Cade, born May 12, 2003, and Gage, born April 14, 2004. After the dissolution, Mother lived in a two bedroom apartment with the children in Clinton, Henry County, Missouri.[1]

On March 3, 2009, Mother gave Father proper notice, pursuant to section 452.377.7,[2] of her intent to relocate the primary residence of the children to Urich, Henry County, Missouri. Urich is approximately fifteen miles from Clinton. Mother informed Father that she wished to move the children to Urich so that she could live with her soon to be new husband, Joseph Collins ("Collins"), and his children.[3] Mother's proposed relocation was to a home which was already owned by Collins. Under Mother's relocation plan, the children, who had been attending Clinton schools, would begin attending school in the Sherwood School District.

On March 17, 2009, Father filed a timely motion to prevent the relocation. In Father's motion, he objected to the relocation because he believed it to be in the children's best interests to continue attending school in Clinton.

Before the trial court conducted a hearing on Father's motion, Mother moved with the children to Urich, two days prior to the end of the school year. At the time, Cade was attending Henry Elementary in Clinton, and Gage was in a pre-school associated with the Clinton School District. As a result of Mother's move, Father was required to travel to Urich to pick up the children for his scheduled visitation.

On May 4, 2009, Father sent Mother a letter which informed Mother that he intended to relocate from his parent's home to a home he had purchased in Clinton, which was two and a half blocks from the Henry Elementary school Cade had been attending and that Gage would be attending. Mother did not respond to Father's letter.

On June 15, 2009, the trial court conducted a hearing on Father's motion. Mother summarily testified that the relocation was in the best interests of the children and that her decision to relocate was made in good faith. Mother testified that the move would be in the best interests of the children because they would be moving into a more spacious home only fifteen miles away. Collins's home in Urich had three bedrooms. Mother testified at the hearing that she and Collins planned to add a fourth bedroom. As a result, Mother's daughter from a previous marriage would have her own room, Mother and Collins would share a room, and Cade and Gage would share a room with Collins's two youngest boys.

Father testified that the proposed relocation was not in the best interests of the children. Father believed the schools in Clinton offered the children more opportunities. Father testified that Clinton was building a new high school and that he

---

1. In addition to Cade and Gage, Mother also has an older daughter by a previous marriage.

2. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

3. Mother and Collins were married shortly before the hearing giving rise to the trial court's judgment. Collins has full custody of two boys from a previous marriage and has visitation rights with a son and a daughter from a previous marriage.

preferred that the children stay in their current school district. Father testified that he did not object to the children living in Urich but that he did object to the relocation if it required the children to change schools.

On July 20, 2009, the trial court entered a judgment denying the proposed relocation. This appeal follows.

### Standard of Review

 "Our review of the trial court's judgment denying or granting a motion to relocate a minor child is governed by the standard in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. Banc 1976)." *In re Steggall*, 296 S.W.3d 25, 27 (Mo.App. W.D.2009). We "must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Miers v. Miers*, 53 S.W.3d 592, 595 (Mo.App. W.D.2001). We view the evidence in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences. *In re Steggall*, 296 S.W.3d at 27. "We will not reverse the trial court's judgment on the basis that it is against the weight of the evidence unless we have a firm basis for concluding that the judgment is wrong or that it is against the logic of the circumstances." *Id.* A trial court's determination in a child custody matter is given more deference than in any other type of case. *Brandow v. Brandow*, 18 S.W.3d 584, 587 (Mo.App. W.D.2000).

### Analysis

In Mother's sole point on appeal, she contends that the trial court erred in denying her relocation request. Mother contends that she presented sufficient evidence to sustain her burden to prove that the proposed relocation was made in good faith and that it was in the best interests of the children.

Relocation of a child is governed by section 452.377 and requires the party seeking relocation, in this case Mother, to prove that the proposed relocation is made in good faith *and* is in the best interests of the children. Section 452.377.9. Best interests are to be measured by the factors set forth in section 452.375.2. *Cullison v. Thiessen*, 51 S.W.3d 508, 511–12 (Mo.App. W.D.2001). Those factors are:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member

who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

Section 452.375.2.

In its judgment denying Mother's proposed relocation, the trial court stated:

The Respondent [Mother] bears the burden of proving that the proposed relocation is made in good faith and is in the best interests of the children. The court finds that the Respondent has failed to sustain that burden in this case, and the proposed relocation is therefore denied.

The trial court's judgment includes no discussion of the section 452.375.2 best interest factors. The judgment provides us with no insight into the reasoning behind the trial court's conclusion that Mother failed to sustain her burden to prove good faith and/or best interests.

Reported decisions in this State have created an atmosphere of uncertainty with respect to whether section 452.375.2 statutory best interest findings are required in all relocation cases. In *Steggall*, a 2009 decision, we held that a trial court in a relocation matter is "not required to set out the factors it relied upon in determining whether or not the relocation is in the best interests of the child." 296 S.W.3d at 28. *Steggall* cited *Vaughn v. Bowman*, 209 S.W.3d 509, 512–13 (Mo.App. E.D. 2006), for this proposition. However, in *Schlotman v. Costa*, 193 S.W.3d 430, 433 (Mo.App. W.D.2006) (citation omitted), we noted:

[I]f the parties disagree on the residence address of the child or on the parenting plan, these are sub-issues of custody that require the trial court's resolution in the form of written findings. *There-fore, it is safe to conclude that if relocation is contested, the trial court should be required to make written findings. In this case, Father contested relocation. The parties did not agree on the custodial arrangement, specifically where the children would reside. Therefore, the trial court should have made written findings on the relevant best interest factors and the public policy of Section 452.375.4.*

(Emphasis added.) Schlotman relied on *Buchanan v. Buchanan*, 167 S.W.3d 698 (Mo. banc 2005) to reach this result. In *Buchanan*, the parties in a traditional dissolution proceeding agreed on joint custody as a custodial arrangement but could not agree on the *child's residence or on a parenting plan.* The Supreme Court noted:

Determining custody and custodial arrangements of children in dissolution actions is one of the most important and most sensitive duties of the court.... Although the parties had agreed that father and mother should have joint custody, *they did not agree on the residence address for the child* or on a parenting plan. *While these may be sub-issues of custody, they were contested and required the court's resolution. So long as any issue or sub-issue of custody is subject to contest between the parties and resolution by the court, written findings that include discussion of the applicable factors from section 452.375.2 are required.*

*Id.* at 702 (emphasis added). The underpinning for *Schlotman*'s application of *Buchanan* to all relocation cases may have been section 452.377.7, which provides that a proposed *change in a child's residence* triggers the obligation to provide notice of intent to relocate.

Following *Buchanan* and *Schlotman*, we have favorably cited both decisions in traditional custodial dispute cases, noting, for example, in *Jones v. Jones*, 277 S.W.3d 330, 334–36 (Mo.App. W.D.2009), that section 452.375.2 statutory best interest findings were required where the parties were in agreement on joint custody and nearly all provisions of a parenting plan, but could not agree which parent's address should be designated as the children's residence for educational and mailing purposes. However, other than *Schlotman*, no other case in Missouri has concluded that *Buchanan* should be read to apply to all relocation cases. In contrast, *Vaughn* and *Steggall*, albeit without discussion of *Buchanan* or *Schlotman*, clearly hold that a trial court need not make statutory best interest findings in relocation matters.[4]

---

4. The principle that "the trial court is not required to set out the factors it relied upon in determining whether or not the relocation is in the best interest of the child" recited in *Steggall* was supported by citation to *Vaughn*, 209 S.W.3d at 512–13. *Steggall*, 296 S.W.3d at 28. *Vaughn* cites *Herigon v. Herigon*, 121 S.W.3d 562, 569–70 (Mo.App. W.D.2003), as its support for the same proposition. *Herigon* cites *Weaver v. Kelling*, 18 S.W.3d 525, 528 (Mo.App. W.D.2000), as its support for the same proposition. *Weaver* cites *Edmison ex rel. Edmison v. Clarke*, 988 S.W.2d 604, 608–09 (Mo.App. W.D.1999), as its support for the proposition. *Edmison* cites *Flathers v. Flathers*, 948 S.W.2d 463, 471 (Mo.App. W.D. 1997), as its support for the proposition.

*Steggall, Vaughn, Herigon,* and *Weaver* were relocation cases. *Edmison* and *Flathers* were traditional dissolution cases. *Edmison* and *Flathers* applied versions of section 452.375 in effect **before 1998.** See *Edmison*, 988 S.W.2d at 608, n. 2. Before 1998, section 452.375 did not include subsection 6, the subsection which imposed the statutory obligation on trial courts to make written findings in any judgment or order with respect to each of the factors listed in section 452.375.2(1) to (8) where *"the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interest of the child."* Section 452.375.6 (emphasis added).

After the 1998 revision to section 452.375, trial courts were thus required to make written statutory findings relating to the section 452.375.2 best interest factors whenever *custodial arrangements* were in dispute. Yet, after 1998, as is evidenced in the above described line of cases beginning with *Weaver*, the principle which relieved trial courts from an obligation to make express best interest findings, though no longer applicable to traditional dissolution matters, continued to appear in *relocation* cases.

This differentiation was supportable. Before *Stowe v. Spence*, 41 S.W.3d 468 (Mo. banc 2001), "best interests" in the context of relocation cases were measured by a four-part test set out in *Michel v. Michel*, 834 S.W.2d 773, 777 (Mo.App. S.D.1992). The four-part test was different from the eight best interest factors set forth in section 452.375.2, explaining, perhaps, the less stringent standard imposed on relocation judgments. In *Stowe*, however, the Supreme Court concluded that the 1998 amendment to section 452.377 required abandonment of the *Michel* four-part test. *Stowe*, 41 S.W.3d at 469. The Supreme Court stated that "section 452.377 now requires the court to determine that the relocation: (1) is in the best interests of the child, (2) is made in good faith, and (3) if ordered, complies with the requirements of [section 452.377.10]." *Id.* The Supreme Court did not advise, however, how "best interests" should be measured. In *Cullison*, 51 S.W.3d at 511–12, and in *Abernathy v. Meier*, 45 S.W.3d 917, 924 (Mo.App. E.D.2001), our appellate courts concluded that best interests in relocation cases must be determined by reference to the eight best interest factors set forth section 452.375.2. See *Dorman v. Dorman*, 91 S.W.3d 167, 172 (Mo.App. W.D.2002). Since that time, Missouri courts have held that in considering a relocation request, a trial court is required to evaluate the same section 452.375.2 best interest factors applicable to disputes over "custodial arrangements." *Steggall*, 296 S.W.3d at 27.

Despite the parallel use of section 452.375.2 to assess "best interests," relocation and traditional dissolution judgments remained subject to different standards, however, with respect to the trial court's obligation to make written best interest findings. Our courts likely concluded that section 452.377 relocation requests were not **disputes over custodial**

Facially, at least, the general legal principles stated in *Schlotman* and *Steggall* are in seeming opposition with one another.

We believe this seeming inconsistency can be harmonized. *Buchanan* involved a traditional dissolution proceeding where the proposed "custodial arrangement," albeit uncontested by the parties, was a matter nonetheless before the trial court. It is thus possible that the Supreme Court only intended to require statutory best interest findings where the residence address of a child is in dispute because a section 452.375 "custodial arrangement" for the child is also before the court. If *Buchanan* is read in this manner, *Schlotman* could be similarly read to apply in relocation cases, but only where a corresponding motion to modify the custodial arrangement has been filed, thus placing a section 452.375 dispute before the court. In *Schlotman*, father requested modification of the custodial arrangement to award him primary care, custody, and control of the children should relocation be approved. 193 S.W.2d at 432. In *Steggall*, by way of contrast, the only matter before the court was a section 452.377 motion to prohibit relocation; no motion to modify the custodial arrangement was filed. 296 S.W.3d at 27. We could thus construe *Steggall*'s statement that statutory best interest findings are not required in relocation matters to apply where modification of the custodial arrangement is not sought by either party.

These interpretations of *Buchanan*, *Schlotman*, and *Steggall* permit us to harmonize the decisions, and are consistent with the language of section 452.377. Since section 452.377, though requiring consideration of "best interests," does not require written best interest findings, it follows that we should not impose the requirement of written findings on the trial court when the only matter before the court is a section 452.377 motion.

We acknowledge that *Buchanan*, *Schlotman*, and *Steggall* do not expressly indicate that application of the principle therein announced was intended to be constrained to the procedural contours of the case. We also acknowledge that our means of harmonizing these decisions is difficult to reconcile with *Vaughn*, where both the party seeking and the party opposing relocation had filed competing motions to modify the custodial arrangement. 209 S.W.3d at 511. We thus acknowledge that it is possible that *Buchanan* and *Schlotman* were intended to be applied as literally written, such that **any** case involving a dispute over a child's residence (and thus **every** relocation case) requires statutory best interest findings. This would require us, however, to conclude that there is an actual conflict between *Steggall* and *Schlotman*. We are reluctant to draw that conclusion.

■ Here, Mother did not file a Rule 78.07(c) motion to amend the trial court's judgment to address a failure to make statutory best interest findings. Typically, this would fail to preserve for review any claim of error associated with the trial court's failure to include required statuto-

---

*arrangements* and, thus, were not covered by section 452.375.6. "Custody" is narrowly defined in section 452.375.1(1) as "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof." One could reasonably construe the phrase "custodial arrangements" to be limited, therefore, to those instances where a court was being asked to decide which form of "custody" to award. As relocation requests do not inherently require a trial court to determine "custody" as so defined, a reasoned basis to exclude section 452.377 relocation matters from the reach of section 452.375.6 could be argued, a conclusion further supported by the fact that section 452.377.9 does not expressly require statutory best interest findings.

ry findings in its judgment. *Holland v. Crow (In the Interest of Holland)*, 203 S.W.3d 295, 302 (Mo.App. S.D.2006). Though, in light of *Steggall*, Mother's failure to raise such a claim of error in a post-judgment motion is excusable, the prospect of a conflict between *Schlotman* and *Steggall* could have been raised in a post-judgment motion. It was not. Thus, we are unwilling to conclude that an actual conflict exists between the holdings in *Buchanan*, *Steggall* and *Schlotman* in the presence of a reasoned basis for distinguishing these decisions, particularly as the prospect of an actual conflict has neither been raised nor briefed by the parties.

█ We therefore conclude that *Buchanan*, *Schlotman*, and *Steggall* are in harmony with one another based on their distinguishable procedural contours.[5] As the case *sub judice* involved only a relocation dispute, and did not involve a motion to modify custody, we will apply the law as stated in *Steggall*. We conclude, therefore, that the trial court was not obliged to make factual findings on the best interest factors set forth in section 452.375.2. As "the trial court is silent as to the factors, the trial court is presumed to have considered all the evidence and [to have] made its ruling based on consideration of the relevant statutory factors, unless the record indicates otherwise." *Vaughn*, 209 S.W.3d at 513.

We turn our attention, therefore, to whether the trial court's judgment is supported by substantial evidence or is against the weight of the evidence with respect to its determination that Mother failed to sustain her burden to demonstrate that her request to relocate was in the best interests of the children and made in good faith. We note that the manner in which the judgment was written makes it unclear whether the trial court concluded that Mother failed to sustain her burden to prove **both** that the relocation was not in the best interests of the children **and** that the relocation was not made in good faith, or whether Mother failed to sustain her burden with respect to only one of these required elements. However, because the trial court was required to find that Mother met her burden as to both good faith and the best interests of the children, if either prong was not met, Mother has not sustained her burden, and the trial court's judgment will be affirmed. *Swisher v. Swisher*, 124 S.W.3d 477, 480 (Mo.App. W.D.2003).

█ We will first examine whether a finding that Mother failed to sustain her burden to prove that the proposed relocation was made in good faith would be against the weight of the evidence. When a court considers whether a parent's desire to relocate a child is in "good faith," the question is whether "the relocating parent's motive or purpose for relocating [is] something other than to disrupt or deprive the non-relocating parent of contact with the children." *Id.* at 481. Here, Mother testified that her motivation for relocating was to enable her to live with her new husband in a home that would, when remodeled, accommodate Mother's blended family unlike her two bedroom apartment. When questioned about how the relocation would affect Father's custodial rights, Mother testified:

I didn't think that it would change at all for the simple fact that I don't want any of the visitations to change. When Chad was still currently living at his mom and dad's, he got up in the morning, he brought the kids to me at the

---

5. We realize this requires us to ignore *Vaughn*, which cannot be reconciled with harmonizing *Buchanan*, *Schlotman*, and *Steggall* based on their procedural differences.

apartment. I got them ready for school, got them to school and he went to work. I just assumed that he would be doing the same thing.

I made it perfectly clear that when the kids got out of school on Wednesday and Thursdays I would drive them down to his work. We would be down here before he got off work at 4:00. So I really didn't see that that was going to make much of a different [sic] because we were pretty much already doing that.

Father does not contend that relocation will affect his custodial rights. In fact, Father expressed no objection, generally, to relocation except insofar as relocation would require the children to change schools. There is simply no evidence in the record that relocation would disrupt or deprive Father of contact with his children, or that Mother intended relocation to have such an effect.

Mother did acknowledge that she physically relocated to Urich *before* the disposition of Father's motion objecting to relocation. This violated section 452.377.7, which provides that the "residence of the child may be relocated sixty days after providing notice, as required by this section, *unless* a parent files a motion seeking an order to prevent the relocation." (Emphasis added.) The clear intent of this provision is to "stay" a parent's relocation once a motion seeking to prevent relocation is timely filed until relocation is subsequently permitted by the court. Section 452.377 does not suggest, however, that relocation in the face of a motion seeking to prevent the relocation is suggestive that the request for relocation was not made in "good faith." Rather, section 452.377.12 provides that:

Violation of the provisions of this section ... may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody

decree. In addition, the court may utilize any and all power relating to contempt conferred on it by law or rule of the Missouri Supreme Court.

Father has not filed a motion to modify and has not sought a contempt order. This is not surprising, as Father has no objection to his children living in Urich, so long as they continue to attend school in Clinton.

We conclude that Mother's relocation prior to the disposition of father's motion opposing relocation does not, under the facts and circumstances in this case, suggest that the proposed relocation was intended to deprive Father of contact with his children. Therefore, we read the trial court's judgment to mean that Mother failed to sustain her burden of proof to apply only to her obligation to prove that relocation was in the best interests of the children.

We thus examine whether a finding that Mother failed to sustain her burden to prove that the proposed relocation was in the best interests of the children was against the weight of the evidence. The record, albeit sparse, does include evidence relating to the best interests factors set forth in section 452.375.2. The evidence indicated the custodial arrangement ordered as a part of the initial decree of dissolution would not be affected by Mother's relocation to Urich. The custodial arrangement provided for the children to be with Mother every Monday and Tuesday, and with Father every Wednesday and Thursday, with Mother and Father alternating every Friday through Monday. Relocation to Urich would not require alteration of this custodial arrangement. Relocation to Urich would, however, require Father to drive the children to Urich for school on Thursday and Friday mornings. Although Mother testified that she would pick up the children from school on

Wednesdays and Thursdays and alternating Fridays to deliver the children to Father, Mother offered no such accommodation to Father to address transportation to school. Father testified that by moving out of his parents' home and into a home near Henry Elementary, he had created an environment which would permit his children to walk to and from school, at least on those days when Father was to have custody.

The evidence indicated Mother's marriage to Collins would permit her to be a stay at home mom. Such evidence can weigh in favor of proposed relocation. *Weaver v. Kelling,* 53 S.W.3d 610, 613 (Mo.App.2001).[6] However, mother presented no evidence to suggest that the only way she could be a stay-at-home mom was by relocating to Collins's home in Urich. The convenience of moving to Collins's existing home in Urich did not foreclose other options which would have permitted Mother's new family to stay in Clinton. Stated differently, though Mother's marriage to Collins appears to have been the decisive factor in permitting Mother to be a stay-at-home mom, the marriage to Collins did not necessitate a move to Urich other than to permit Mother and Collins to live in Collins's existing home in lieu of finding a new home in Clinton. In fact, Mother testified that there were homes which could accommodate all seven family members in Clinton. Though Mother expressed a desire to have all of her children living together with Collins's children and attending the same schools, Mother offered no evidence that the proposed relocation to Urich was the only viable option for Mother to accomplish this objective.

Father's principal (and in fact only) objection to Mother's relocation was that the relocation would require the children to change schools. Section 452.375.2(5) identifies the children's adjustment to home, school, and community as a relevant "best interest" factor. Father testified that he believed it to be in the children's best interest to continue attending school in the Clinton School District, a school district in which Cade had been enrolled for two years and in which Gage had been enrolled for one year. Father testified:

Q: Is there—Why do you believe that they should attend the Clinton Schools District verses the Sherwood School District?

A: I believe for their future they'd have better opportunities in this school district.

Q: Are you familiar with whether or not the Sherwood School District has built or constructed any new buildings on behalf of their educational system?

A: I am unaware that they have.

Q: Are you aware of whether or not Clinton School District has constructed any new facilities on behalf of their educational system?

A: Yes.... Construction of a new high school. They're giving more room for the other grades to expand, also.

Q: Do you have any intent in relocating your residence from Clinton to anyplace else prior to your children receiving a high school graduation?

A: No.

Mother failed to present any evidence relating to the impact of relocation on the children's education. When questioned about the Sherwood School District and about activities that would be provided for

**6.** This case is to be distinguished from *Weaver v. Kelling,* 18 S.W.3d 525, 528 (Mo.App. W.D. 2000), previously cited in this Opinion.

the children in the elementary schools, Mother responded,

A: I'm not aware of what they allow in their schools. I don't know.

Q: You haven't even went [sic] to attend the school; is that right?

A: I went there and I talked to the— the counselor and the people that do like the kindergarten screening for Gage. They said they normally don't do anything until they do enrollment, and then when you do your enrollment they let you know pretty much what things will—what things are like and teachers and—

Mother was aware from Father's motion that Father was concerned about the children changing schools. Yet, Mother presented no meaningful evidence to address this concern, notwithstanding the fact she bore the burden to prove relocation was in the children's best interests.[7]

Based on the foregoing, we cannot conclude that the trial court's determination that Mother failed to sustain her burden to prove that relocation was in the best interests of the children was against the weight of the evidence or was not supported by substantial evidence.

We are mindful that the impact of affirming the trial court's judgment is to prohibit an intrastate, fifteen mile relocation, while other decisions of this court have affirmed judgments permitting interstate relocations distancing parents with custodial rights by hundreds of miles. However, such seemingly inconsistent outcomes are wholly consistent with the fact that each request for relocation must be determined based on the unique and particular facts of the case presented to the trial court. *Vaughn,* 209 S.W.3d at 512 ("Disputes concerning the relocation of a child must be resolved on their particular facts.") The deference we afford trial court judgments in relocation matters reflects the trial court's superior position to evaluate the facts in each case, and to assess, based on those unique facts, the best interests of the children.

### Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed.

All concur.

---

7. Apparently, neither party considered or was willing to file a motion to modify the parties' parenting plan to seek, in light of Mother's relocation request and Father's singular objection to the same, an adjustment in the address designated for the children for educational and mailing purposes from Mother's to Father's address. Our Opinion does not foreclose this possibility, which, based on the record before us, would likely result in Father withdrawing his opposition to Mother's relocation request as long as the children attend school in Clinton.