

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| SCOTT LAVERY, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD86668 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | October 1, 2024 |
| | ) | |
| REBECCA LAVERY, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Marco A. Roldan, Judge**

**Before Division One:** Edward R. Ardini, Jr., Presiding Judge,
Mark D. Pfeiffer and Cynthia L. Martin, Judges

Ms. Rebecca Lavery ("Mother") appeals from the judgment of the Circuit Court of Jackson County, Missouri ("trial court"), modifying a prior dissolution decree and awarding sole physical and legal custody in favor of Scott Lavery ("Father"). We affirm.

## Mother's Briefing Deficiencies

Before turning to the facts and arguments pertinent to Mother's appeal, we first address how her briefing deficiencies have affected our review.

On appeal, all briefs must comply with Rule 84.04.[1] *Lexow v. Boeing Co.*, 643 S.W.3d 501, 509 (Mo. banc 2022). Rule 84.04(a) requires an appellant's brief to include, among other components, the "points relied on" for the appeal and argument sections substantially following the order of the points relied on. An appellant must restate each point relied on before its respective argument section, Rule 84.04(e), and must develop the point's argument by demonstrating how the principles of law and the facts of the case interact, *Green v. Div. Emp. Sec.*, 652 S.W.3d 370, 375 (Mo. App. W.D. 2022) (citing *Wallace v. Frazier*, 546 S.W.3d 624, 626 (Mo. App. W.D. 2018)). Failure to develop a point relied on through the argument section preserves nothing for review. *Id.* (citing *Wallace*, 652 S.W.3d at 628).

Mother's brief includes three points on appeal. The first point appears to challenge the custody modification judgment by asserting a sufficiency-of-the-evidence challenge and a corresponding erroneous application of law challenge with Mother's characterization of the evidence. The second and third points are against-the-weight-of-the-evidence challenges wherein Mother recites the case precedent detailing the four-step process that must be adhered to in presenting an against-the-weight-of-the-evidence challenge . . . *and then fails to provide any analysis whatsoever about any of those four steps as applied to the case.* In fact, Point III is not even discussed in the Argument section of Mother's appellate brief. Because Mother has failed to develop either Point II

---

[1] All references to Rule 84.04 are to I MISSOURI COURT RULES - STATE 2024.

or III in her appellate brief to this court, those points are not preserved for our review and are, accordingly, denied.

Furthermore, Mother's statement of facts fails to comply with Rule 84.04(c). Under Rule 84.04(c), "[t]he statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument." To present a fair statement of facts, "[a]n appellant is required to provide 'a statement of the evidence in the light most favorable to the verdict, not simply recount [appellant's] version of the events.'" *Waller v. A.C. Cleaners Mgmt., Inc.*, 371 S.W.3d 6, 10 (Mo. App. E.D. 2012) (alteration in original) (quoting *Hoer v. Small*, 1 S.W.3d 569, 572 (Mo. App E.D. 1999)).

Mother's statement of facts is neither fair nor concise. Her statement of facts is well over thirty pages and often recites pages of trial transcript verbatim (compared to approximately six pages of legal analysis in the entire appellate brief), is argumentative and recited in a light most favorable to Mother's version of events, and ignores evidence that is essential and favorable to the custody modification judgment entered by the trial court.

For her failures to comply with Rule 84.04(c), we would be well within our discretion to dismiss her appeal, especially considering that Mother received an extension of time to file her initial brief and then later had the opportunity to file an amended brief after her initial brief was struck in part for violating Rule 84.04(c). *R.M. v. King*, 671 S.W.3d 394, 398 (Mo. App. W.D. 2023) (quoting *Gan v. Schrock*, 652 S.W.3d 703, 708 (Mo. App. W.D. 2022)) ("A violation of Rule 84.04(c), standing alone, constitutes

3

grounds for dismissal of an appeal."). However, because the facts essential to this appeal have been provided in Father's brief, we will exercise our discretion to review Mother's appeal, *ex gratia*. *ModivCare Solutions, LLC v. Off. of Admin.*, 682 S.W.3d 810, 818 (Mo. App. W.D. 2024) ("Because 'meaningful appellate review is possible' and because respondents have supplemented the facts with their own statements, we have discretion to review the appeal despite any deficiencies in the appellant brief's statement of facts . . .").

## Factual and Procedural History[2]

Mother and Father's marriage began in 2004 and ended when it was dissolved on May 4, 2022, in a dissolution decree providing for joint legal and physical custody of their two minor children. In the dissolution decree, the court found from the evidence presented at that time, that the parties were in good physical health and no evidence suggested either party suffered from ill mental health.

Shortly after the dissolution decree was issued, on May 31, 2022, Mother texted her friend that she would stop by her residence to leave a box on her porch. When the friend came home and discovered that the box contained Mother's personal belongings and several notes strongly indicative of suicidal intent, the friend reported Mother as a missing person. After police were unable to initially contact Mother or identify her phone's location because it was turned off, they searched for several hours before finding

---

[2] When reviewing a judgment modifying a prior determination of child custody, "[w]e review the evidence in the light most favorable to the trial court's decision." *Brandow v. Brandow*, 18 S.W.3d 584, 587 (Mo. App. W.D. 2000) (citing *Graves v. Graves*, 967 S.W.2d 632, 640 (Mo. App. W.D. 1998)).

4

her the next morning. Mother had checked into a nearby hotel under an alias—her dog's name.

When found in her hotel room, Mother had a bag filled with numerous prescription and over-the-counter medicines. Mother was eventually taken to a hospital and placed on a ninety-six-hour psychiatric hold. There, Mother answered an initial suicide assessment, which indicated a high risk of suicide. While at the hospital, Mother expressed no interest in discussing or treating the reason for her hospitalization, even when confronted with the notes she left on her friend's porch, and instead fixated on leaving the hospital as soon as possible. In seeking her release, Mother denied having any suicidal ideation.

Citing Mother's quickly deteriorating mental health post-dissolution as a potential threat to the children's wellbeing and as an indicator that Mother might abscond with the children, Father filed a petition seeking modification of the dissolution decree in June 2022 to provide sole custody to Father. Father also moved for the appointment of a guardian ad litem and for a temporary restraining order granting him sole physical custody of the two children. The trial court sustained both motions. Mother and Father then stipulated to a temporary parenting plan that provided Father sole physical custody and joint legal custody but allowed Mother four hours of weekly supervised parenting time with the children.

As part of a separate stipulated order, Mother agreed to undergo a psychological evaluation in January 2023 and to fully cooperate with any treatment recommendations

made by the examiner. The psychological examiner[3] concluded in a post-examination report that Mother would not succeed with treatment if she refused to acknowledge and accept the severity of her mental health issues and the seriousness of the May 31 incident. The examiner recommended a three-part treatment strategy: (1) a more thorough evaluation to be performed by a psychiatrist; (2) individual therapy; and (3) family therapy.

In the months preceding trial on the motion to modify, Mother did not seriously pursue any of the three components of the examiner's recommendations.

Mother scheduled and attended a psychiatric evaluation as directed. But, Mother did not provide the examiner's report to the psychiatrist as required by the stipulated order. Because Mother failed to provide this report, the psychiatrist performed only a cursory examination and relied almost entirely on Mother's self-reported account of her mental health. As a result of Mother's non-compliance, the psychiatric evaluation failed to achieve its intended goals of formally diagnosing Mother's mental health issues and prescribing appropriate psychotropic medication to improve her condition.

Although Mother attended individual therapy sessions as recommended, she did not follow through with the purpose of the recommendation: to address the mental health issues that led to the May 31 incident. Mother delayed providing her therapist with a copy of the examiner's report, as required by the stipulated order, for several weeks.

---

[3] Pursuant to the directive of section 509.520 (RSMo Supp. III 2023), we do not provide the names of any non-party witnesses in this opinion. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through June 2, 2022, unless otherwise indicated.

Even after providing the report, Mother largely refused to address the May 31 incident as anything to be concerned with; instead, Mother used her time in therapy to vent her frustrations about the trial court's restrictions placed on her ability to see her children.

And, Mother attended only one family therapy session, which came just one week before trial.

Further diminishing the effectiveness of her incomplete treatment efforts, Mother continued to claim throughout the discovery process that she was not suffering from ill mental health, that the May 31 incident was not related to her mental health, and that she had not experienced any suicidal ideation during that incident. Even during her testimony at trial, Mother insisted on a series of other explanations for the May 31 incident, which the trial court expressly did not credit.

In addition to evidence of Mother's deteriorating mental health, the trial court received evidence of Mother's opioid dependency and the adverse effect that the opioid dependency was having on her physical and mental health.

After the May 31 incident, Mother requested a refill of her opioid prescription. When asked by her pain-management doctor whether her recent hospitalization was related to suicidal ideation, Mother admitted she was taken to a psychiatric hospital but denied having any suicidal thoughts. The doctor received Mother's hospital records after the appointment and found Mother's account of the hospitalization to be inconsistent with the hospital's notes, which extensively detailed that Mother was hospitalized for suicidal ideation. Upon discovering this inconsistency, the doctor recorded a patient chart entry expressing concern with Mother's report and indicating that Mother's opioid dosage

7

should be reevaluated because opioids pose significant risks for patients with suicidal ideation.

When Mother was cross-examined on her use of medications at trial, she could accurately recite her prescriptions from several years prior. But when asked to recite the medications she had taken the day of trial, she initially refused. When asked specifically whether she had taken hydrocodone that day, Mother admitted she had taken one dose before the beginning of trial but did not discuss any other medications.

Following the trial, the trial court determined that Mother's refusal to address her mental health issues and her worsening dependency on opioids created serious risks for her physical and mental health, which were not apparent pre-dissolution. The trial court determined that Mother's untreated mental health issues posed a threat to the well-being of the children, which justified modifying the prior dissolution decree as to child custody. The trial court adopted the parenting plan proposed by the guardian ad litem, which provided for Father to exercise sole physical and legal custody. Mother timely appealed.

In her sole preserved point on appeal, Mother argues that her mental health issues and opiate prescription cannot serve as the "changed circumstances" required to modify a custody order because they predate the original dissolution decree.

### Standard of Review

We will sustain the court's judgment on custody unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. The trial court's determination in child custody proceedings is given greater deference than in any other type of case. We will not disturb the trial court's judgment unless we are firmly convinced that the welfare of the child requires some other disposition or

8

unless it is clearly against the logic of the circumstances or is arbitrary or unreasonable.

*Brandow v. Brandow,* 18 S.W.3d 584, 586-87 (Mo. App. W.D. 2000) (internal quotations and citations omitted); *Mantonya v. Mantonya*, 311 S.W.3d 392, 395 (Mo. App. W.D. 2010).

## Analysis

[T]he court shall not modify a prior custody decree unless . . . it finds, upon the basis of facts that have arisen since the prior decree *or that were unknown to the court at the time of the prior decree*, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

§ 452.410(1) (emphasis added). "When physical custody is modified from joint to sole, a 'substantial change' must be shown. Not every change in circumstances calls for a modification of custody. When deciding a physical custody modification, the court only considers changes related to the custodial parents' abilities to care for the children." *Woolery v. Woolery*, 679 S.W.3d 17, 23 (Mo. App. W.D. 2023) (internal quotation marks and citations omitted) (quoting *Hark v. Hark*, 567 S.W.3d 671, 677 (Mo. App. E.D. 2019)). If a trial court's finding of a substantial change in circumstances is supported by substantial evidence, it will not be disturbed on appeal. *See id.* at 25.

Mother's argument—that the trial court could not rely on her mental health issues as a change in circumstance because the trial court was aware of them before the original custody decree was entered—fails for two reasons.

First, the dissolution court's decree explicitly stated it had *not* received evidence indicating that either Mother or Father were suffering from any mental health issues.

9

Thus, Mother's ill mental health was a fact that was unknown to the court at the time of the original dissolution decree.

Second and more importantly, the trial court did *not* conclude that Mother's mental health issues, generally, constituted changed circumstances. Rather, the trial court specifically focused on three post-dissolution courses of conduct which demonstrated that Mother's mental health issues had intensified since the original dissolution decree: (1) the May 31 incident where Mother concealed herself in a hotel room with obvious signs of suicidal intent, (2) her continued refusal to recognize her mental health issues, and (3) her failure to seriously pursue any treatment options for her mental health issues despite opportunities and a court-ordered mandate to do so.

These facts, cited in the trial court's judgment, are not disputed in the record or in Mother's appellate brief. Given the deference accorded to a circuit court's determinations on child custody matters and the evidence in the record supporting the trial court's findings, we have no reason to disturb the trial court's determination that these three post-dissolution developments surrounding Mother's mental health constituted a change in circumstances.

As part of her pattern of minimizing facts favorable to the judgment, Mother also asserts that the trial court modified the custody determination simply because it learned of her opioid prescription and contends that taking medication based on a pre-dissolution prescription cannot constitute a change in circumstances.

However, the trial court did *not* modify the original dissolution decree because it learned Mother had been taken opioids for several years. Rather, the trial court

specifically relied on two other post-dissolution events that suggest Mother's relationship with opioids was growing increasingly unhealthy and dangerous: (1) Mother's willingness to lie to her prescribing doctor about her mental health in order to continue receiving the same opioid prescription despite facing significant physical health risks in doing so and (2) her unwillingness to provide a full account of the extent of her day-to-day medication during her trial testimony.

The trial court concluded that these post-dissolution developments, when taken in the context of her doctor's concerns about Mother's dependence on opioids, demonstrate a *new* danger to Mother's physical health that was not presented during the original dissolution proceedings. Because these concerns are supported by substantial evidence in the record, we will not disturb the trial court's determination that these concerns for Mother's physical and mental health constituted additional changed circumstances.

The trial court concluded that Mother's untreated mental health issues and their potential negative interaction with Mother's opioid dependency will pose a danger to the physical and emotional well-being of the children if Mother is allowed to have unsupervised access to the children in the future. These changes in Mother's circumstances affect her ability to care for her children and, thus, constitute valid justification for modifying the original dissolution decree to award Father sole custody.[4]

---

[4] The trial court also found that the parties are no longer capable of functioning as a unit in making shared decisions on the children's health, education, and welfare. "The parties' inability to communicate, cooperate, and make shared decisions concerning their children's welfare makes joint legal custody inappropriate, and a breakdown of parental communication and cooperation is 'sufficient in, and of itself, to constitute a change in circumstances . . .'" *In re Marriage of Sutton*, 233 S.W.3d 786, 790 (Mo. App. E.D.

11

## Conclusion

The judgment of the trial court modifying custody of the children is affirmed.

_____
Mark D. Pfeiffer, Judge

Edward R. Ardini, Jr., Presiding Judge, and Cynthia L. Martin, Judge, concur.

---

2007) (quoting *McCauley v. Schenkel*, 977 S.W.2d 45, 50 (Mo. App. E.D. 1998)); *see also Reno v. Gonzales*, 489 S.W.3d 900, 904-05 (Mo. App. W.D. 2016)) (holding that a trial court commits legal error in awarding joint custody if the record does not demonstrate the parents can function as a single unit in making parental decisions). Mother does not address this alternative basis for modifying the decree anywhere in her appellate briefing to this Court. In failing to do so, she has waived any argument that this finding is erroneous. *Geiler v. Liberty Ins. Corp.*, 621 S.W.3d 536, 546-47 (Mo. App. W.D. 2021) (quoting *TracFone Wireless, Inc. v. City of Springfield*, 557 S.W.3d 439, 445 (Mo. App. S.D. 2018)) ("By not challenging a trial court's finding on appeal, 'a party "waives any claim" that necessarily runs counter to those findings.'"). Mother's failure to challenge this separate basis supporting the judgment would be fatal to her appeal, even if her other challenges were meritorious. *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012).